CELIA A. WINE, Appellee, v. C. B. JONES, Appellant.

**NEGLIGENCE:** Crossing Streets Between Intersections. The act of 1 a pedestrian in crossing a street at a point other than at regular crossings, even without looking both ways, or listening, does not necessarily constitute negligence *per se*, especially where the surface of the street was the same at all points.

**APPEAL AND ERROR:** Brief Points—Insufficiency. A statement 2 of error and the brief points thereunder must be sufficient, *in and of themselves*, to definitely lay before the court, without independent investigation on its part, the *precise* ruling complained of, and the law as applicable thereto, as contended by appellant.

PRINCIPLE APPLIED: The statements of error and the brief points in connection therewith simply revealed the following: 1. "That the charge as a whole was erroneous because it failed to apply the law to the facts, as contended by defendant * * * as shown by the record, and instructions asked by defendant, and the exceptions taken by defendant to the court's instructions."

2. "That the court erred in refusing to give Instructions 1 to 7, as requested by defendant."

3. "That the court erred in giving Instructions 1 to 12, inclusive, as' a whole, and, in particular, Instructions 5, 11, and 12 thereof, for all the reasons stated in defendant's objections."

*Held*, wholly insufficient.

TRIAL: Refused Instructions Otherwise Covered. Refusing instructions which dealt with' the degree of care necessary under given conditions leaves no error, when the court adequately covered the same ground in its charge to the jury.

NEGLIGENCE: Failure to Give Statutory Signals. It is suggested that the failure of a motor vehicle driver to give the statutory signals may not be excused on the ground that the driver "believed" he could, in safety, pass a pedestrian without giving such signals.

APPEAL AND ERROR: Argument in Lieu of Brief Point Not Allowable. A brief point applicable to each statement of error is absolutely essential. Subsequent argument is not essential. Therefore, a point or proposition not appearing as a *brief* point, or insufficiently stated as a brief point, may not be considered, even though fully covered in the general argument.

CONSTITUTIONAL LAW: Right of Appellate Court to Prescribe Rules. The legislature may not deprive the Supreme Court of its inherent power, as a court for the correction of errors at law, to prescribe appropriate rules for the orderly and accurate presentation of appeals; moreover, rules which require "statements of error and brief points" are not in conflict with Sec. 4136, Code Supp., 1913.

NEGLIGENCE: Proximate Cause—Instructions. An instruction to the effect that plaintiff may not recover unless he establishes (1) that defendant was negligent, (2) that such negligence was the proximate cause of the injury, and (3) that plaintiff did not, by his own' negligence, contribute to his injury, sufficiently protects defendant on the subject of proximate cause.

APPEAL AND ERROR: "Points" Limited to Objections in Trial Court. A brief point may not be so expanded as to embrace an objection not made in the trial court.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

APRIL 5, 1917.

REHEARING DENIED JUNE 24, 1918.

ACTION for damages consequent on a collision with a motorcycle, resulted in judgment for plaintiff. The defendant appeals.—*Affirmed.*

*C. G. Lee* and *I. R. Meltzer*, for appellant.

*R. E. Nichol* and *John Y. Luke*, for appellee.

LADD, J.—Main Street in the city of Ames is 80 feet wide, with 54 feet paved between the curbings. It extends east and west, and in it is laid the track of a street railway,

1. NEGLIGENCE: crossing streets between intersections.

extending to that portion of the city where the Iowa State College is located. It intersects Grand Avenue, extending north and south. This street is paved 30 feet between the curbings, north of Main Street, and 38.6 feet between curbings, south of Main Street, and is the main thoroughfare to the college.

On June 20, 1914, the pavement between the car tracks at the intersection had been removed, and cinders put in its place. In the morning of that day, plaintiff, with her daughter and two children, walked north on the west side of Grand Avenue until about 20 feet south of Main Street, when they started across the avenue to the east, or northeast; and, when plaintiff was about 8 feet from the curbing, as is alleged, she was struck by defendant's motorcycle, coming from the north on Grand Avenue, and was injured. The defendant had ridden west on Fifth Avenue (a street about 216 feet north of Main Street), and turned south on Grand Avenue. The speed at which he was moving was estimated by the several witnesses at from 10 to 35 miles per hour. But two grounds of negligence are charged: excessive speed and failure to warn. The evidence was such as to carry both of these to the jury.

I. Appellant contends that the evidence established

conclusively that plaintiff, by her own negligence, contrib-
uted to her injury. That she attempted to cross the street
at a point other than at the regular street crossing would
not alone, as a matter of law, constitute negligence. *Bell
v. Town of Clarion,* 113 Iowa 126; same case, 115 Iowa 357;
*Finnegan v. Sioux City,* 112 Iowa 232; *Middleton v. City of
Cedar Falls,* 173 Iowa 619; *Fox v. Village of Manchester,*
183 N. Y. 141 (2 L. R. A. [N. S.] 474) ; *Magaha v. Hagers-
town,* 95 Md. 62 (93 Am. St. 317; *City of Denver v.
Sherret,* 31 C. C. A. 499; *City of Olathe v. Mizee,* 48 Kans.
435 (30 Am. St. 308). See collection of cases in note to
*Lerner v. City of Philadelphia,* (Pa.) 21 L. R. A. (N. S.) 614,
666. A foot passenger has a right to cross a street at any
point, and is not restricted to the regular crossing. Such was
the ruling in *O'Laughlin v. City of Dubuque,* 52 Iowa 746,
which modified an apparent holding to the contrary in the
case when previously before the court. See 42 Iowa 539.
Here, there is no showing that there was a street crossing
other than the ordinary pavement, or that it was different
at the intersection than where the plaintiff undertook to
cross. Plaintiff had the same right to use the street at one
point as the other, though, possibly, greater vigilance on
her part might be required at points other than at the
street intersection, and where people ordinarily cross. In
the *O'Laughlin* case, the defect was in the street at a point
other than at the crossing, and the contention was that, in-
asmuch as the city had afforded a safe way, the plaintiff
ought not to recover, if injured in crossing the street else-
where. The court held that, in the circumstances disclosed,
the issue as to whether the plaintiff therein was negligent,
was an issue appropriate for submission to the jury. Here,
no such crossing appears to have been provided. The pave-
ment was continuous. The way across was as safe over one
part of the pavement as over the other, save for its use by
others; and the plaintiff had the same right to travel the

street as did the defendant. Each was bound to exercise ordinary care to avoid injuring or being injured. What would constitute ordinary care depended upon the use to which the street was put; and the issue as to whether either the plaintiff or defendant omitted the exercise of such care was for the jury to determine.

Nor can it be said that the pedestrian must look both ways or listen for automobiles or motorcycles before undertaking to cross a city street. *Baker v. Close,* 204 N. Y. 92 (97 N. E. 501) ; *Adler v. Martin,* 179 Ala. 97 (59 So. 597). A pedestrian is not bound to constantly keep a lookout for approaching vehicles. *Hennessey v. Taylor,* 189 Mass. 583 (3 L. R. A. [N. S.] 345, 4 Am. & Eng. Ann. Cas. 396) ; *Gerhard v. Ford Motor Co.,* 155 Mich. 618 (20 L. R. A [N. S.] 233, and notes): All exacted from one in traveling along or across a street, at the crossing or elsewhere, is that he exercise ordinary care for his own safety; and what constitutes such care depends on the character of the street, the extent of its use by vehicles, and the kind using it, whether crossing at the regular crossing or elsewhere, and the like. Of course, one may undertake to pass over a street under circumstances such as to render the attempt negligent: as, heedlessly running in front of an approaching automobile. *Gibbs v. Dayton,* 166 Mich. 263 (131 N. W. 544) ; *McCormick v. Hesser,* 77 N. J. L. 173 (71 Atl. 55). Ordinarily, it is the duty of a pedestrian to take some precaution in crossing a street, either by listening or looking for passing vehicles. *Niosi v. Empire Steam Laundry,* 117 Cal. 257 (49 Pac. 185) ; *Evans v. Adams Express Co.,* 122 Ind. 362 (7 L. R. A. 678) ; 2 Elliott on Roads and Streets, Section 1123.

The rights and duties of the wayfarer and the driver of a vehicle, whether automobile or motorcycle, in the use of the streets, are reciprocal. Both may make use of the highway or street, and each must exercise ordinary care

to avoid being injured or injuring the other. *Coombs v. Purrington,* 42 Me. 332; *Belton v. Baxter,* 54 N. Y. 245 (13 Am. Rep. 578). What will amount to want of ordinary care depends, as said, on the circumstances of each particular case. As a better lookout is likely at street intersections, it would seem that greater care should be exercised by a pedestrian in crossing elsewhere; for it is elementary that the care to be exercised is necessarily commensurate with the dangers of the situation. But whether going out into the street, as plaintiff did, was careless, need not be determined. Negligence is a relative term, and it cannot be said that, as to defendant, the failure of plaintiff to look to the north, before or after leaving the sidewalk, amounted to want of ordinary care. The witnesses agree that she was out from the curbing from 5 to 10 feet, and defendant testified that the way was clear between them ( plaintiff and daughter) and the curb, and that they were from 6 to 8 feet out from the curb. He was asked:

"They had gotten so far that you thought the way was clear behind them? A. I didn't think it; I saw the way clear."

He estimated his distance from them then at 30 feet, and thought he was moving 16 or 18 inches from the curbing when plaintiff was struck, and explained that she "waved" back and forth until within about four feet from the curb, when she made an effort "to make the curb." The plaintiff testified that, when struck, she was facing east, or northeast, about 6 feet from the walk, and had no occasion to turn back any, after starting to cross the street. The real issue, then, was whether plaintiff, after walking out into the street, turned or backed in front of the motorcycle, as testified to by defendant, which must have been found to constitute negligence, or whether she was struck when out in the street 6 or 8 feet, leaving ample room for the passage of the motorcycle. The evidence of the greater number of

witnesses supported the latter view, and this conclusion would exculpate plaintiff of the charge of negligence. The issue as to whether she contributed to her injury by her own fault was rightly submitted to the jury.

II. Exception is taken to the charge as a whole, for that, though it attempted to apply the law to the facts as contended by plaintiff, it failed to "apply the law as contended by defendant, notwithstanding the court was requested by the defendant repeatedly to make such applications, as shown by the record and the instructions asked by the defendant, and the exceptions taken by defendant to the court's instructions." It will be noted that no particular "omission in applying the law as contended by defendant" is alluded to. We are referred to the record, the seven instructions requested and refused, and the objections to the instructions generally, to find out as best we can. Manifestly, the error relied on for reversal is not stated as required by Rule 53 of this court. Nor is there anything in the proposition or authorities in support thereof indicating the ruling complained of, or where it is to be found. The argument following discusses six of the seven requested and refused instructions together; though, merely as an example indicating omission to apply defendant's theory of law to the facts, it quotes a part of the fourth of those refused:

2. APPEAL AND ERROR: brief points: insufficiency.

"In other words, an ordinarily prudent person, in attempting to cross a place used only by pedestrians would not use the degree of care which such a person would use in attempting to cross at a place known by them to be frequented by vehicles propelled by artificial power, which cannot be instantly stopped; nor would an ordinarily prudent person apprehend as much danger in crossing a street at a regular crossing as would be encountered in crossing a street between crossings, not prepared for pedestrians."

If it were permissible to rule on this, it might be suggested that it was not applicable to the facts; for evidence disclosed that, at the crossing, there was no "place used only by pedestrians." The pavement out in the street was not different at crossings than elsewhere. If it can be said to have been sufficient to invoke the attention of the court, it seems to have been unnecessary; for the fourth paragraph of the charge, after defining negligence and ordinary care, added:

"It is evident that the care exercised by an ordinarily prudent person is in proportion to the apparent danger involved. That is, where the apparent danger is great, greater care is required than where the danger is slight."

In other instructions, the jury was told that plaintiff was bound to exercise ordinary care in crossing the street. These, considered in connection with the instruction partly quoted, sufficiently advised the jury of the care exacted of plaintiff. We are not saying that appellant properly raised this question, but that, even if he did, error would not be apparent. We may add that the instructions do not appear to have been one-sided and unfair.

3. TRIAL: refused instructions otherwise covered.

The seventh assignment of error reads: "Because the court erred in refusing to give Instructions 1 to 7, as duly requested by defendant." These are referred to no more definitely in brief point or proposition, and they are argued *en masse*, except that the sixth instruction is set out, and it is said that "this phase of the case" is not presented in the instructions given. The difficulty is in the instruction requested and referred to in argument, which, in part, reads:

4. NEGLIGENCE: failure to give statutory signals.

"If the defendant, even though he saw the plaintiff upon the street, believed that she would pass on to his left, and, as a reasonably prudent man, had the right to believe

that he could pass her safely, and that no danger was involved by failing to warn her of his approach, the fact, if it be a fact, that he did not warn her, would not be negligence in this case."

How defendant's belief that plaintiff "would pass on to his left" would relieve or excuse him from giving the warning exacted by statute, even though he may have believed, acting in reasonable prudence, that he could pass her in safety, is not explained; and probably because of this defect, the instruction was refused. Moreover, such warning was for the benefit of others on the street, and appellant's care in other respects would not relieve him from duly obeying the law.

The eighth assignment is to "giving Instructions 1 to 12, inclusive, as a whole, and in particular, Instructions 5, 11, and 12 thereof, for all the reasons stated in defendant's objection." The brief point or proposition is equally general, though the argument centers attack on a portion of the eleventh instruction:

"However, in considering the question of whether or not the plaintiff did use ordinary care and caution for her own safety, you have a right to take into consideration the fact that, when the plaintiff attempted to cross the street on foot, at the time of the accident, she had a right to assume that any motorcycle or other motor vehicle would give timely warning of its approach, should any be approaching at such distance away as to afford an opportunity to give such warning or signal."

This would seem to go no further than saying to the jury that a person, in crossing the street, may rely upon obedience to the law on the part of others who are using it. That this is correct, appears from decisions declaring that one about to cross a railway track may rely upon trains' not exceeding the speed limit defined by a city or town ordinance. *Moore v. Chicago, St. P. & K. C. R. Co.*, 102 Iowa

595; *Case v. Chicago G. W. R. Co.*, 147 Iowa 747. To say that this might be taken into consideration does not, as seems to be assumed, mean that anything less than the exercise of ordinary care is to be exacted from one in crossing a street or highway, whatever the situation; nor is there anything in the instruction so intimating.

This much for the criticism. As will be noticed, Rule 53 of this court has not been observed. That portion relating to the preparation of the brief may as well be set out. It is to contain:

"Fifth. The errors relied upon for a reversal. Following this, the brief shall contain, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration, together with the authorities relied on in support of them; and in citing cases, the names of parties must be given, with the book and page where reported. When textbooks are cited, the number or date of the edition must be stated, with the number of the volume and the page or section. No alleged error or point not contained in this statement of points shall be raised afterwards, either by reply brief or in oral or printed argument, or on petition for rehearing."

It will be observed that whether the error relied on has been stated, is not the test, as formerly, of whether the ruling complained of will be considered. The criterion by which that is to be determined is whether the question appears in the point or proposition following the recital of rulings claimed to be erroneous. If not there found, the ruling is not reviewable. The point or proposition should state the law applicable to the particular ruling complained of, as contended by the appellant. If the number corresponds with the error relied on, the precise difference is perspicuously presented to the court

5. APPEAL AND ERROR: argument in lieu of brief point not allowable.

and the appellee. The advantage is not alone to the court and the opposing counsel, but the attorneys for appellant thereby are led to analyze the question involved, and, in the clearest and most forcible way, to point out their precise objection to the ruling of the *nisi prius* court. To so do is made, by the rules, essential to a review of the ruling complained of. The rule requires that appellant state the errors relied on for reversal. Sections 4136 and 4137 of the Code exacted the assignment of errors as a condition of having them reviewed, but these statutes were repealed by the thirtieth general assembly, and it enacted that:

"No assignment of errors shall be required in any case at law or in equity now pending or hereafter docketed in the Supreme Court." Section 4136, Code Supplement, 1913.

Counsel for appellant contend that the rule is in conflict with this statute, and if so, the authority of this court to adopt the same is rightly challenged. The manifest purpose of the statute was to do away with certain abuses which had grown up under the practice under the statutes repealed, sometimes as high as 400 or 500 errors being assigned in a single case, and much refinement being indulged in ascertaining whether the assignment of error complied with Section 4136, which declared that it "must clearly and specifically indicate the very error complained of." In remedying this abuse, however, the legislature had no notion of impinging upon the Constitution, which, in Section 4 of Article 5, declared that:

6. CONSTITUTIONAL LAW: right of appellate court to prescribe rules.

"The Supreme Court shall have appellate jurisdiction only in cases in chancery, and shall constitute a court for the correction of errors at law, under such restrictions as the general assembly may by law prescribe; and shall have power to issue all writs and process necessary to secure justice to parties, and exercise a supervisory control over all inferior judicial tribunals throughout the state."

The legislature may impose restrictions, as by limiting appeals by the amounts in controversy (*Andrews & Smith v. Burdick & Goble,* 62 Iowa 714) ; but it may not, by the enactment of restrictions, so change the character of the court as that it shall be other, in reviewing a law action, than "a court for the correction of errors at law." It cannot be assumed that all adverse rulings are challenged as erroneous. On the contrary, they are conclusively presumed to have been correct, in so far as the particular cause is concerned, until complaint, in some manner, is lodged against them. How shall those of which complaint is raised be ascertained by the reviewing court? The rulings cannot well be reviewed unless the reviewing tribunal is informed of the particular rulings of which complaint is made. In other words, it cannot well correct a ruling without ascertaining in some manner what it is called upon to examine and, if erroneous, correct. This is inherently essential to any review of a ruling the correctness of which is challenged, and cannot be prohibited by the general assembly. Nor do we think such was its purpose in enacting Section 4136 of the Code Supplement, 1913. All intended was to dispense with the so-called assignment of errors as a separate pleading in the case, formerly included separately in the abstract and required to be served on appellee 10 days before the first day of the trial term, in the absence of showing of good cause for failure, to avoid dismissal or affirmance. Technically, an assignment of errors is a pleading, in the nature of a petition, reciting the rulings complained of and invoking the jurisdiction of the appellate court. *Lamy v. Lamy,* 4 N. M. 29 (12 Pac. 650) ; *Hinkle v. Shelley,* 100 Ind. 88; *Wells v. Martin,* 1 McCook (Ohio St.) 386, 388; Powell on Appellate Proceedings, 277; *Ditch v. Sennott,* 116 Ill. 288 (5 N. E. 395) ; *Associates of Jersey Co. v. Davison,* 29 N. J. L. (5 Dutch.) 415. The

statute dispenses with this formal pleading, but does not undertake to prescribe the manner of arguing errors complained of, in presenting a cause to this court.

Section 4139, Code Supplement, 1913, provides that "the parties to an appeal may be heard orally and in writing, subject to such rules as the court may prescribe;" and, thereunder, we have adopted such rules as seem essential to argument, and among them, that the question to be argued shall first be stated. This is not in conflict with Section 4136 of the Code Supplement, 1913, but merely the exaction that a brief shall be prepared in orderly fashion: that is, by first stating (1) the particular rulings complained of; (2) what such ruling should have been, as contended by appellant, with citations claimed to state the law on the subject; and (3) elaboration of any of these by way of argument. If the numbers of error point or proposition and division of argument correspond, as intended by the rules, investigation is greatly facilitated. Under the rules, however, the statement of the point or proposition only is essential to a hearing; for no litigant should be heard to complain of a ruling without stating what he contends it should have been, and this cannot be done without, in some way, pointing out what the ruling was, of which complaint is made. But it is preferable, in this respect, to follow the rules. The point, then, that this court has disregarded Section 4136 of the Code Supplement, 1913, is not well founded.

III. The objection to the fifth instruction was that "the same defines proximate cause incorrectly; and, as applied to this case, the instruction is improper and prejudicial, in that, even though the jury might find the defendant was negligent, if plaintiff herself was negligent, and it was because and on account of her negligence that she was injured, such negligence on her part would be

7 .NEGLIGENCE: proximate cause: instructions.

the proximate cause of the injury." The brief expands this
somewhat, but only the objection as filed
may be considered. In the instruction, the
jury was told that, to warrant a recovery,
these allegations must be established by a
preponderance of evidence "(1) that the defendant was neg-
ligent in one or more of the respects charged, and submitted
to you in these instructions; (2) that such negligence was
the proximate cause of plaintiff's injury, and that she
was damaged thereby; (3) that plaintiff herself was not
guilty of any negligence causing or contributing to such in-
jury." If any of these were not so established, their ver-
dict must be for defendant, and this was added:

"You are instructed that negligence is the proximate
cause of an injury which follows such negligence, if it can
be fairly said that, in the absence of such alleged negligence,
the injury and damage complained of would not have oc-
curred."

As applied to this case, the definition is accurate, and
the third allegation required to be proven as a condition
of recovery, obviated the possibility suggested in the ob-
jection. We are of opinion that defendant was accorded
a. fair trial.—*Affirmed.*

GAYNOR, C. J., EVANS, PRESTON, and SALINGER, JJ., con-
cur.

*[margin note: 8. APPEAL AND ERROR: "points" limited to objections in trial court.]*