ADELIA JAHR, Appellant, v. AUGUST E. STEFFEN et al., Appellees.

CONSPIRACY: Joint Conspirators—Civil Recovery Against One
1 Defendant. Where a petition alleged a conspiracy between two defendants, and that, in pursuance thereto, one of them struck and injured plaintiff, recovery may be had against such defendant without recovery against the other, on proof of the striking and injury, and without any proof of the conspiracy, the allegation of conspiracy being mere inducement.

APPEAL AND ERROR: Reservation of Grounds—Questions Reviewable.
2 Where an appeal had been taken more than six months after entry of judgment, but within that time after ruling on the motion for a new trial, the only error reviewable in the Supreme Court is that alleged in the motion for a new trial.

SALINGER, J., dissents, on the ground that, on such appeal, review should be limited to matters subsequent to verdict or decree.

APPEAL AND ERROR: Assignments of Error—Brief Points—
3 Sufficiency. Under Supreme Court Rule 53, an alleged error set out in the brief points or provisions is a subject of review, even though there be no separate assignment of the error.

SALINGER, J,, dissents.

*Appeal from Scott District Court.*—F. D. LETTS, Judge.

OCTOBER 2, 1919.

ACTION for damages consequent on an alleged assault and battery resulted in a directed verdict for defendants. The plaintiff appealed.—*Reversed.*

*M. V. Gannon* and *C. S. Roberts,* for appellant.

*Albert Hamann,* for appellees.

LADD, C. J.—It appears that the defendant Steffen sued out a writ of replevin against plaintiff and her husband for the possession of certain orders; that the sheriff, in serving the writ, failed to procure the orders, and that a bench warrant was sued out which was placed in the hands of a constable, Khles, for service; that the defendant Lambach, an attorney, accompanied Khles in going to plaintiff's home to serve the warrant, where, according to the testimony of plaintiff, corroborated by her daughter, the defendant Lambach grabbed plaintiff by the hair and held her in a chair, whereupon her daughter "jumped on" and "scratched him in the face." She further testifies that he then threw the papers she had handed to him down, and, as plaintiff reached for them, he hit her a blow, and said, "Get there;" and that, owing to injuries suffered, she was taken to the hospital for treatment. This evidence was contradicted by Lambach. On motion, the court directed the jury to return a verdict for the defendants. This ruling seems to have been planted on an erroneous construction of the petition, as claiming damages consequent on an alleged conspiracy, rather than upon the injury alleged to have been done plaintiff. Conspiracy was alleged between defendants by way of inducement; but in pursuance of such conspiracy, it was also alleged that Lambach "did forcibly strike, beat, and throw down plaintiff, then in a sick and exhausted condition, and caused her such injury" that it was necessary for her to be treated at the hospital. The case is ruled by *Young v. Gormley,* 119 Iowa 546. In order to recover against both defendants, a combination or conspiracy must have been proven; but the evidence was insufficient for this purpose, and the court right-

1. CONSPIRACY: joint conspirators: civil recovery against one defendant.

ly directed a verdict for Steffen. But the evidence produced tended to show that Lambach assaulted and beat plaintiff, as alleged, and this was enough to carry the case to the jury as to him. As said in the case cited:

"In order to recover against all defendants, it is necessary to prove a combination or joint act of all. For this purpose, proof of conspiracy may become essential. But if it turns out that but one was concerned, recovery may be had against that one, the same as though he had been sued alone. If more than one jointly do the wrong, like recovery may be had, though conspiracy had not been established. In other words, the allegation of conspiracy in such cases is mere matter of inducement and evidence, the injury and damages being the gravamen of the action."

See *Heisler v. Heisler*, 151 Iowa 503; *Dunshee v. Standard Oil Co.*, 165 Iowa 625; *McCann v. Clark*, 166 Iowa 705; *Hobbs v. Illinois Cent. R. Co.*, 171 Iowa 624. *Hablichtel v. Yambert*, 75 Iowa 539, is not in conflict with this conclusion.

Appellee urges that, as no error is assigned, the ruling on the motion for new trial is not reviewable. No separate assignment of error was made, but that complained of was stated at the beginning of what is denominated the brief and argument, as follows:

2. APPEAL AND ERROR: reservation of grounds: questions reviewable.

"The only error that can now be argued before the court is that attributable to the trial judge in directing a verdict at the close of plaintiff's testimony in favor of the defendants."

This clearly states the only ruling of which complaint is or could have been made; for the appeal was taken more than six months after judgment, but within that time after the motion for new trial had been ruled on. See *Mueller Lumber Co. v. McCaffrey*, 141 Iowa 730, to which decision the court adheres. It could not well have been stated in a more definite way, nor well have escaped attention where

found.  This so-called brief and argument

**3. APPEAL AND ERROR: assignments of error: brief points: sufficiency.** was preceded by "Points and authorities;" following which are the words, "Assault and battery and conspiracy;" and thereunder are recited the rules of law applicable, and citation of decisions establishing them, precisely in harmony with our conclusion in the foregoing opinion.  Indeed, the precise question involved was pointed out: i. e., whether, a wrong being charged to have been committed by several, in pursuance of a conspiracy, upon failure to prove conspiracy recovery may be had against one or more of those alleged to have conspired.  The error complained of was apparent from a mere glance at the brief.  The form prescribed by the rules for constructing the brief were not strictly pursued; but this is not essential, though greatly to be desired.  Rules of procedure are largely directory, unless by their terms necessarily made otherwise, and all exacted is substantial compliance therewith.  Substance is preferred to mere form; and, if the brief is such as to state or point out the particular rulings complained of in comprehensible language, in brief point or proposition, or by reference, direct or implied, to the assignment of error, this will suffice.  The rules of practice ought not to be construed with technical nicety, but rather, with a view of facilitating the presentation of the issues of law or fact by litigants in such manner as that the court shall know the precise questions on which its opinion is sought.  Such presentation cannot well be made by attorneys without sufficient study and analysis of the case on appeal to enable them to comprehend the rulings complained of, their bearing in the trial, and what should have been the rulings of the trial court; and, if this is done, little difficulty will be experienced in conveying the information so acquired in substantial compliance with the rules for the preparation of briefs.  This is the object of such rules.

The first question which suggests itself is, Of what ruling or order does appellant complain? 2. Why does he complain? 3. What has the court done that violates the rule which should govern? 4. What should have been the court's ruling? 5. Why does counsel say that this should have been the ruling, and not that stated by the court? 6. What authority has counsel for his assertion that the court erred, and that the rule as stated by him is the true rule?

To comprehend any ruling, however, it is ordinarily necessary that the court have before it the issues upon which the cause was tried, a statement of the facts, as disclosed by the evidence, and the decision of the court upon the facts. Therefore, Rule 53 provides that:

"The brief of appellant shall contain a short and clear statement disclosing: First. The nature of the action. Second. What the issues were. Third. How the issues were decided, and what the judgment or decree was. Fourth. A brief and concise statement of so much of the facts as fully presents the errors and exceptions relied upon, referring to the pages and lines of the abstract. Fifth. The errors relied upon for a reversal. Following this, the brief shall contain, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration, together with the authorities relied on in support of them; and in citing cases, the names of parties must be given, with the book and page where reported. When textbooks are cited, the number or date of the edition must be stated, with the number of the volume and the page or section. No alleged error or point not contained in this statement of points shall be raised afterwards, either by reply brief, or in oral or printed argument, or on petition for rehearing."

The rule following exacts substantially the same plan in preparing appellee's brief and the reply, and Rule 55

relates to the argument. It will be observed that Rule 53 closes with this significant sentence:

"No alleged error or point, not contained in this statement of points, shall be raised afterwards, either by reply brief, or oral or printed argument, or on petition for rehearing."

Impliedly, this is saying that, if the alleged error or point is found in the statement of points or propositions, it may be discussed afterwards, and constitute the subject of review, but not otherwise. Though the errors relied on for reversal should be assigned under the fifth subdivision, yet, as seen, if these are stated in the brief points or propositions under separate headings, this will be enough. In other words, the rulings complained of should be stated under the fifth paragraph of this rule, and incorporated into the brief point or proposition, either by referring to the assignment of error by corresponding number, or by restating the same in said brief point or proposition under separate heading; and, if the latter course is pursued, the omission of a separate assignment of error will not prevent a review of the ruling complained of. As remarked in *Wine v. Jones,* 183 Iowa 1166, these rules merely exact "that a brief shall be prepared in orderly fashion: that is, by first stating (1) the particular rulings complained of; (2) what such ruling should have been, as contended by appellant, with citations claimed to state the law on the subject; and (3) elaboration of any of these by way of argument. If the numbers of error point or proposition and division of argument correspond, as intended by the rules, investigation is greatly facilitated. Under the rules, however, the statement of the point or proposition only is essential to a hearing; for no litigant should be heard to complain of a ruling without stating what he contends it should have been, and this cannot be done without, in some way, pointing out what the ruling was, of which complaint is made."

Nothing said in *Snyder v. Heuer,* 184 Iowa 538, nor in *Loving v. Atlantic So. R. Co.,* 184 Iowa 435, is inconsistent with this view; for in neither is the question of where the errors relied on must appear, under a separate heading or in connection with the brief points or propositions considered. If appearing in the latter, by reference to the formal assignment of error or statement thereof, this will be sufficiently definite. As ruled in *Wine v. Jones,* supra:

"Whether the error relied on has been stated, is not the test, as formerly, of whether the ruling complained of will be considered. The criterion by which that is to be determined is whether the question appears in the point or proposition following the recital of rulings claimed to be erroneous," in the manner hereinbefore stated.

The only question raised in the motion for new trial was whether the court erred in directing the jury, and this was sufficiently assigned.—*Reversed.*

WEAVER, EVANS, GAYNOR, PRESTON, and STEVENS, JJ., concur.

SALINGER, J. (dissenting). I. The petition charged a conspiracy, and seeks recovery against both alleged conspirators, either because the conspiracy was formed and carried out, or because one defendant, in carrying it out, injured the plaintiff by striking her. For the purposes of present statement, it is unnecessary to go into whether the claim for damages is based upon the conspiracy or upon the striking of the blow. The defendants moved a directed verdict, substantially on the grounds that there was no proof of the charged conspiracy. This motion was sustained on the 30th day of January, 1917. On that day, judgment was entered which recited that entry was made because a verdict for defendants had been returned on direction. A motion for new trial was overruled. When it was too late to appeal from the main judgment, but still time to appeal from the ruling on the motion, notice of appeal was served, which

included both the main judgment entered and the overruling of the motion for new trial. The matter complained of in the motion inheres in the main judgment, and is all that inheres in it.

It will be admitted that *McLaughlin v. Hubinger Bros· Co.,* 135 Iowa 595, holds squarely that, if one appeal from the judgment too late, he cannot make any point inherent in the judgment by timely appeal from the overruling of his motion for new trial. I concede that the *Hubinger* case was overruled by *Mueller Lbr. Co. v. McCaffrey,* 141 Iowa 730. My position is that we should recede from this overruling, and should re-affirm the overruled case, and should, therefore, dismiss this appeal. I submit that the overruled case is sustained by many decisions in this court.

In *Cohol v. Allen,* 37 Iowa 449, we said that the main appeal "was not taken in time to authorize us to review the proceedings prior to the judgment. * * * So far as the appeal relates to the proceedings ending in the judgment upon the verdict, it is dismissed. The action of the court in refusing to regard the showing touching the newly-discovered evidence as an amendment to the motion for a new trial, is a part of those proceedings, and we cannot review it. We are, therefore, not permitted to consider the objections urged by counsel to this and other rulings made in the progress of the case."

But the dismissal of a petition for new trial based on newly discovered evidence was considered, because appealed from in time, though the appeal-from the main judgment was taken too late. On the other hand, we refused to consider a claim in the petition for new trial that the findings of the jury were not supported by the evidence, were in conflict with the instructions given, "and that the law was incorrectly given by the court to the jury." We refused to consider these claims because these matters inhere in the proceedings "prior to the judgment upon the verdict." It

should be noted in this connection that two statutes govern the right of presentation on appeal: one is that any matter to which due objection is made in the course of the trial may be presented, on appeal from the final judgment, though no motion for new trial be made; the other statute is, in effect, that there may be no appellate review as to any matter that might have been corrected below, if there duly presented for correction. In the light of these, the *Cohol* case decides that nothing to which due exception was taken in the course of the trial may be presented on an appeal from the overruling of a motion for new trial, and that no review of such rulings may be had, except on appeal from the main judgment, taken in due time. Therefore, the *Cohol* case squarely supports the overruled case. In *Wishard v. McNeil,* 78 Iowa 40, judgment by default for want of answer was entered against defendant on December 17, 1887. On June 5, 1888, he filed petition for new trial on the grounds of fraud or unavoidable casualty, and this motion was stricken from the files. Within six months after the default judgment, he appealed, and appellee moved to dismiss as to the default judgment, because appeal therefrom was not taken in time. We held that, though the appeal could not properly be regarded as one taken from the default judgment, yet that judgment was involved in the appeal from the order striking the petition, and hence the motion could not be sustained. It will be noticed that the appeal taken did not present anything that inhered in the judgment from which appeal had not been taken. The judgment on default for want of answer no more decided that failure to answer was due to fraud or unavoidable casualty than a judgment entered on a verdict decides in advance of a motion for new trial that the verdict is not due to passion and prejudice, and that there was no misconduct in the jury room. In other words, in a judgment by default for want of answer, the question whether the

default was due to fraud or casualty does not inhere. While the appeal from the ruling on petition for new trial was entertained, it appears plainly that this was done because the petition presented matters that did not inhere in the main judgment, and all the reasoning indicates that the appeal would not have been entertained, were it not for that fact; and thus again the overruled case is sustained. The *Wishard* case construes the *Cohol* case, 37 Iowa 449, 450, to hold "that the proceedings which ended in the judgment could not be reviewed where the appeal was not taken within six months from the time of its rendition." The *McCaffrey* case disposes of the *Cohol* case by saying that the petition was overruled long after the overruling of the motion for new trial, and that, "as the appeal was taken more than six months subsequent to the entry of judgment, only the ruling on the amendment was considered." To begin with, this is so loose as to be misleading. The petition for a new trial, as such, was ruled on, but the Supreme Court *declined* to consider the ruling which refused to treat the petition as an amendment to the motion. But that passed, the *McCaffrey* case meets the *Cohol* case with nothing but making a distinction without a difference on the question whether a timely appeal from ruling on motion for new trial will get review of what inheres in the main judgment which, though appealed from, is appealed from too late. It bases that distinction on the lapse of time between a given ruling and a ruling on the petition. What has that to do with whether one may, by appeal from the overruling of his motion for new trial, raise what inheres in a judgment appealed from too late? The question to be decided is not how tardy a ruling was, but what may be reviewed on a timely appeal from a ruling, no matter how tardily that ruling was made. The naked fact that a petition is filed at a time too late to file a motion for new trial has no bearing on the point under discussion. For

any case which decides that a timely appeal from a petition for new trial, filed in due time, will not obtain review of what inheres in a main judgment, not appealed from in time, is, of necessity, authority for the proposition that the same is true on timely appeal from a motion for new trial filed in due time. While a petition may be filed later than the motion, the later filing is as much in due time as the earlier filing of the motion. So, when the *Cohol* case refused to consider, in an appeal from a ruling on such a petition, whether it was error to refuse to treat the petition as an amendment to the motion, it decided that appeal from the overruling of a motion for new trial cannot get review of whatever inheres in the main judgment. In *Bosch v. Bosch*, 66 Iowa 701, a decree in equity was rendered August 18, 1883, and on the same day, defendants filed a motion for a new trial, based on alleged errors committed by the court. This motion was overruled January 21, 1884, and an appeal was taken on June 30, 1884. But the errors assigned in the motion for a new trial were not assigned in this court, and it was held that, since the appeal was taken more than ten months after the date of the decree, review *de novo* could not be had, though appeal was perfected within six months from the overruling of the motion. We said that, to enable this court to consider the errors assigned in the motion, errors should have been assigned here, and that, if this had been done, possibly we might have awarded a new trial, but that appellant is not entitled to trial *de novo* nor final decree here. It is further said:

"There are certain orders and decisions which may be made during the trial of a cause from which no appeal can be taken until final judgment is entered, and, therefore, more than six months may have elapsed from the time the decision was made before an appeal can be taken. But this fact does not affect the question under consideration,

because the appeal in this case is claimed to be from the judgment."

The *McCaffrey* case truly says, we held we cannot review a ruling on a motion for new trial unless error be assigned thereon. But though this is true, it is also true we hold that in no event can we "review any of the proceedings of the court prior to the filing of such motion." Again, the *McCaffrey* case points out the immaterial fact that, in *Palmer v. Rogers,* 70 Iowa 381, we hold that, in an appeal from final judgment and order, the setting aside of a default may be reviewed, though the setting aside was not appealed from. But the *Palmer* case also holds that the appeal from the final judgment brings up for a review all intermediate rulings. This is, of course, no decision that what went before judgment can be reviewed when the appeal from the judgment is too late. It is a holding that, on timely appeal from the main judgment, antecedent rulings may be reviewed. That, too, is the holding of *Lesure v. Mutual F. Ins. Co.,* 101 Iowa 514. That was an interlocutory judgment for costs on a plea in abatement, and also final judgment against defendant on the merits. The interlocutory judgment was appealable. A notice of appeal was served more than six months after the entry of the interlocutory judgment, but within six months from the entry of said final judgment. We held that the interlocutory judgment might be reviewed on appeal. This but makes clear that, had timely appeal been taken from the judgment in the case at bar, we could have reviewed the very question which was presented by the motion for new trial, and the appeal from the overruling of same.

The reasoning in the overruled case seems irrefragable. It is there said:

"The rule that an appeal from all questions inhering in the judgment must be taken within six months from the rendition of the judgment is a salutary one. * * * if

the same questions may be presented in an appeal from the judgment and in an appeal from the ruling on a motion for a new trial, two appeals may be pending at the same time, presenting for determination precisely the questions, and this was not the intention of the legislature. Exceptions were taken to all of the matters urged as grounds for a new trial, and, under the rule of the cases heretofore cited, every question presented therein was a part of the proceedings culminating in the judgment rendered on the 6th of January; and we have no jurisdiction to now review them."

If this argument is unsound, then the loser may perfect an appeal from the judgment, obtain extension of time to file a motion for new trial, presenting the very complaints that will be made in the main appeal, and, on the overruling of the motion, appeal again, and, if defeated on the main appeal, retry it on second appeal, on the claim that the point disposed of by the first appeal is better argued than it was on the first appeal. Again, it might happen that the appeal from the final judgment would be joined in this court by the appeal from the overruling of the motion for new trial. And, while these might be consolidated, for convenience in decision, both appeals would have to be passed upon, each presenting the identical question basing the other. And on the reasoning of the Mc-Caffrey case, the appeal from the final judgment might result in an affirmance, without application for rehearing, or rehearing be denied; but the question determined on the main appeal might be re-argued to us on the appeal from the ruling on the motion. One flaw in the reasoning of the overruling case is that it fails to appreciate the effect of the two statutes dealing with applications below as the basis for appellate review. The case loosely puts errors occurring at the trial and those occurring later,—say, a verdict on insufficient evidence,—into the same class. This tends

to explain why it declares that to limit review of over-
ruling a motion for new trial to matters occurring after
the trial would make the right to appeal of little substan-
tial value.    Whether that be so or not, the said two stat-
utes make plain that no other right is given.    One of these
statutes is that, as to all that occurred on the trial, under
exception, motion for new trial is not required, to base ap-
pellate review.    The other statute denies appellate review
as to matters to which the attention of the trial court was
not called.    The two together must mean that since, as to
what occurred on the trial, motion for new trial has no
bearing on appellate review, the right to appeal from the
overruling of such motion is limited to matters as to which
such motion is required—matters that did not occur until
after the trial.

Another argument in the *McCaffrey* case is this:

"The result is, a litigant may, but is not required to,
challenge the correctness of the court's ruling a second
time.    *    *    *    The ruling on each point raised, though it
may be but a repetition of a previous ruling, is quite as de-
cisive."

The justification for giving the litigant these two op-
portunities is:

"The manifest design of such motion is to enable the
court to review its rulings entered during the trial at great-
er leisure, and upon full investigation, to the end that, if
errors are discovered, these may be corrected, rather than
the parties be put to the trouble and expense of an appeal,"
and one ruling is as decisive as the other.

One result that will follow if this shall be adhered to
is that finding a judgment against title, and that no ap-
peal was taken within six months from its entry, will
mean nothing.    For finding such a record will be no evi-
dence that the court will not be given more leisure in con-
sidering the propriety of the judgment by a petition for

new trial filed within one year from the time the judgment was entered, or, for that matter, on a petition which, in some circumstances, may be filed much later than that.

Still another argument is, judgment may be entered immediately upon the return of the verdict, and that, therefore, unless a litigant may rely on correcting errors in an appeal from overruling a motion for new trial, he will, in many cases, be driven to carry his suit to the appellate tribunal before he can know whether the trial court will give relief on motion for new trial. What prevents the litigant from waiting until the last day of the six months before he appeals from the final judgment? He may, in reason, hope to have his motion for new trial decided within six months. After he perfects his appeal, he will, roughly speaking, have about six months before he needs to serve abstract. This will give approximately 12 months wherein to have a motion for new trial decided, and he need do nothing in the meantime beyond serving notice of appeal. If, at any time within this twelve months, he prevails on a motion for new trial, he can dismiss the appeal he has taken. Surely, the possibility of hurrying one as to his appeal is not a good reason for overruling the *Hubinger* case. Nor does it meet a case where, as in this, both judgment and new trial ruling are appealed.

### 1-a

I have attempted to show how well supported in authority is the overruled case. What of the overruling case in that respect? It claims *Kendall v. Lucas County*, 26 Iowa 395, compels the overruling, and says that the *Hubinger* case "evidently" overlooked the *Kendall* case, "in which the contrary was held." It may be that, in deciding the *Hubinger* case, the *Kendall* case *was* overlooked. But that, of course, is no ground for overruling the *Hubinger* case, if the *Kendall* case is immaterial, and in no way militates against the *Hubinger* case. If the *Kendall* case is to

control, rather than the *Hubinger* case, and if the latter
should be overruled because of the former, it is not too
much to ask that, at the least, the *Kendall* case should in
some way touch the point in the *Hubinger* case,—and I con-
fidently assert it does not. The point ruled in the *Hu-
binger* case is that, if the main judgment be not review-
able, no appeal from overruling a motion for new trial
will obtain appellate review of whatsoever inheres in the
main judgment. The *Kendall* decision does not in any man-
ner affect this pronouncement, for two reasons: First, in
the *Kendall* case, *no appeal was taken from a ruling on a
motion;* wherefore, the case cannot be a decision on what
may be done on such an appeal; second, the case does not
attempt to pass on what may be done on such an appeal,
and does not even say anything on that point. The state-
ment of the case is:

"There was a trial to a jury, verdict and judgment for
plaintiff. The defendant appeals."

The only holding on or reference to the subject of ap-
peal is the giving of reasons why the appeal from the main
judgment, the only appeal taken, ought not to be dismissed,
and these reasons are as follows: "Counsel insist that ap-
peal was not taken in time." The transcript shows appeal
was taken on November 7, 1867, the last day of the October
term, and notice was served November 11, 1868. Now, of
course, if this were all, it would necessarily follow that the
appeal must be dismissed. But it is further said:

"It also appears from the transcript that, at the Octo-
ber term, 1867, the court took the motion of defendant for
a new trial under advisement, and did not decide the same
until the 3d day of April, 1868, *and that the judgment was
not rendered until that date.* No agreement is shown on
the part of defendant that the judgment might be entered
as of the last day of the trial term. Under these circum-
stances, we hold that this appeal was taken in time."

The *Hubinger* case holds that, if the main judgment may not be reviewed, there can be no review on appeal from overruling new trial as to any point which inheres in the main judgment. We find that this is overruled principally because of a case which holds merely that, because of the pendency of a motion for new trial, judgment was, in truth, rendered later than is stated in one recital of the transcript, time from the appeal in the main case runs from the true date at which judgment was entered. The *McCaffrey* case places reliance upon *In re Estate of Bishop*, 130 Iowa 250. All that case holds is that the time within which an appeal may be taken from an order denying a new trial does not commence to run until actual entry of the order; that an appeal may be taken from an order denying a new trial although judgment may have been entered prior thereto; and that the entry of the judgment is no indication that a motion for new trial has been disposed of.

It is true it does not appear in *Wambach v. Grand Lodge*, 88 Iowa 313, whether a motion for new trial was filed. If, as the *McCaffrey* case says, that disposes of the *Wambach* case as an authority, it also disposes of the *Kendall* case as an authority, because therein it does not appear that ruling on motion was ever appealed from independently, and does appear that the only appeal was one from the main judgment.

It will be found that, in every case except the *McCaffrey* case, where we entertain an appeal from an order overruling a motion for new trial where no appeal was taken from the final judgment, or, what is the same thing, appeal was taken too late, the matter reviewed on the appeal from the overruling of the motion for a new trial was matter not inhering in the final judgment—matter that could not be reviewed without a motion for new trial— matter which did not belong to the class concerning which an exception at the trial is sufficient basis for appellate

review, without the interposition of a motion for new trial. To permit an appeal from the directing of a verdict by appealing only from the denial of a new trial because of such misdirection, would make all the statutes on appeal absurd. A verdict is directed. Due exception is taken; notwithstanding, judgment is entered. If the direction was erroneous, that error inhered in that judgment. The moment the judgment was entered, if not earlier, appeal lies to test whether the direction was erroneous. In theory, that appeal must be perfected within six months. If it may be presented on appeal later than that from a ruling refusing to grant a new trial on account of said misdirection, then the statute which limits the appeal to six months from the final judgment is useless. Appeal can be taken before, or at least as soon as, the final judgment is entered. The only error is that there was a misdirection. As said, that error inheres in the judgment. The statute limit for appeal is six months. But not on the theory of the majority. By repeating his complaint in a motion which is unnecessary to base an appeal, the party can extend his time for appealing from this misdirection beyond six months from the time at which the misdirection occurred.

I have tried to make plain it can do no conceivable harm to limit review on appeal from ruling on motion for new trial to what happens subsequent to verdict or decree. and that it must lead to all sorts of absurdities and overriding of elementary rules of practice to review on the appeal on the ruling on such motion a point that was reviewable on appeal from the main judgment, and to give such review when it is too late to review the main judgment. I am abidingly satisfied that we should return to the *Hubinger* case, and overrule the *McCaffrey* case. If it was permissible to overrule the *Hubinger* case erroneously, there should be no delicacy to keep from overruling the *McCaffrey* case because it is unsound. .

II. The brief of appellant states a law proposition in a rule "Point." It has no statement of "Errors Relied on for Reversal." I cannot agree that, in such state of the record, we should reverse.

The case of *Wine v. Jones,* 183 Iowa 1166, cannot possibly be authority on whether a statement of errors relied on for reversal is essential, because the record of that case contains such a statement. So, while the case declares that, "under the rules, however, the statement of the point or proposition *only* is essential to a hearing," the word "only" was utterly unnecessary to decision. The scope of and the absence of such a statement of errors relied on for reversal was not for consideration and decision. On the other hand, declarations strongly indicating that both error points and brief points are essential are dicta, also. We said in *Snyder v. Heuer,* 184 Iowa 538, that:

"Neither an assignment of errors relied on for reversal nor brief points will, under the present rules, entitle an appellant to review. These rules demand, first, an allegation of what error is relied on for reversal, and a brief point, as defined by the rule upon that error assignment."

This, so far as language goes, holds squarely with me. But the trouble is that all the case *decides* is that there can be no review because there were no brief points—and it decides no more than that; because, while the brief point was absent, error points *were* made. And this is the situation in *Loving v. Atlantic So. R. Co.,* 184 Iowa 435, another case where the brief point was not made, but there *was* a statement of errors relied on for reversal. There is, however, some color for this dissent in *State v. Dimmitt,* 184 Iowa 870, wherein we said: "Moreover, the brief for the appellant does not as much as have an error point, to say nothing of a brief point on the matter,"—which is at least indicative that it is deemed important there be both. In *State v. Kiefer,* 183 Iowa 319, 336, the defendant appel-

lant asserted that certain essential proof was lacking.  His was an appeal in aid of liberty, and yet we said:

"Neither of these matters is involved in any of the errors assigned and said by appellant to be those relied on, nor is it covered by the brief points."

It will be noticed that here stress is laid, not only upon the brief point by name, but also upon the errors relied on for reversal,—an indication given that both are essential. Then we continue:

"Doubtless, this accounts for no attention being given to the subject by the state in its brief, for the rules exact that no point or proposition not found in the brief points shall be considered."

At most, the question is an open one.  Treating it so, I go to what is, on reason, the true construction of the rule.

We have power to waive this rule in any case, and have done so in aid of liberty.  But it seems to me manifest that we should no more ignore this rule than we should permit litigants to ignore it; that, when it is desired to waive the observance, this should be done by express declaration; and that we should neither waive nor ignore the rule arbitrarily.  For that would be favoritism, pure and simple, and would, in effect, repeal the rule, and substitute for it our assertion that some cases had its equivalent, while demanding strict obedience in others—without reasons to justify the different treatment.

Here, the appellee squarely raises the question, and it must be met.

### 2-a

It will not do to mold the construction of this rule, which is intended to be general, upon the exigencies of this particular case.  Therefore, I shall be as brief as possible in pointing out that even here nonobservance may create difficulties in review.  The single brief point states that, in order to recover against all defendants, it is necessary to

prove a combination or joint act of all; that, if it turns out that but one was concerned, recovery may be had against that one as though he had been sued alone; and that, if more than one jointly do the wrong, like recovery may be had though no conspiracy has been established; that, in such cases, the allegation of conspiracy is matter of inducement and evidence, and the injury and damage resulting from executing the conspiracy is the gravamen of the action. Verdict was directed for defendants on the ground, in substance, that there was no proof of the conspiracy charged, and that, therefore, neither defendant was liable for any act done in carrying out the alleged conspiracy. There was judgment upon this verdict, and because of this verdict. Thereupon, motion for new trial was filed, asserting nothing except that it was error to direct the verdict. On the overruling of this motion, appeal was taken from both the judgment and the said ruling on the motion, and that is the appeal we have. There is no means of knowing whether it is the direction of the verdict that is complained of, or whether it was entering judgment on that verdict, or to overrule the motion for new trial. What error are we to redress? Answering that question may change the course of the consideration. If it be the complaint that the court erred in overruling the motion for new trial, there is suggested an inquiry whether the motion was filed in time, whether due exception was taken to the ruling, and whether the motion adequately raised the complaint now made. Whether it was error to enter judgment, raises an inquiry that has no reference to the motion for new trial, and presents, by way of illustration, whether appeal from the judgment was taken in time. If the error complained of is directing verdict at the time it was done, that does not call for any inquiry into the propriety of entering judgment, or of the ruling on the motion for new trial. But it does require a considera-

tion of what the state of the record was when the motion to direct was made, what that motion was, and whether the ruling thereon was duly excepted to.    It might require passing upon the effect of mutual motions to direct, and whether the conduct of appellant had not waived the right to complain of the direction.

These suggestions indicate some reasons for holding that the rule demands both the "Errors Relied on for Reversal" and the "Brief Points."  If the rule penalty attaches only for failure to state the law propositions in rule manner, such point might so be stated, and still the court be left in darkness as to what it was to redress.   The first advises the court of what was done and claimed to have been done erroneously.   It blazes the way for looking into the record to ascertain, first, whether that thing was done. After the first states what is complained of, comes the function of the proposition—to complete the complaint by stating in a concise manner why the action had was wrong. To leave out either might well make the other meaningless, and so deprive the court of that aid which it is the object of the rule to afford.

In *Parnham v. Weeks*, 185 Iowa 455, there are brief points which concisely state a rule of law, and cite support by authorities.  It would be impossible to decide that case without consulting the errors relied on for reversal found in the brief.   Only on consulting these do the propositions stated make plain what is complained of, and why it should not have been done.   The same situation exists in *Peterson v. McManus*, 187 Iowa —.

The very structure of the rule demands both.   Manifestly, where it is expressly required that a certain thing shall be found in the brief, and that certain other things shall follow the first thing, it is contemplated that the brief shall contain both.   Manifestly, a command that a document shall contain two things, one of which is to fol-

low the other, is not obeyed by printing but one of them. And the rule requires the statement of "the errors relied upon for a reversal," and that the propositions or points shall have, "under a separate heading of each error relied on, separately numbered propositions or points."

The rule fixes a penalty. It is that "no *alleged error* or point not contained in this statement of points shall be raised afterwards," etc. In other words, the penalty seems to be addressed both to the error point and the separately numbered propositions that are to be put under the head of the errors relied on for a reversal. If it may be said that the penalty attaches only to failure to state the law propositions, it would be a persuasive argument for a claim that the statement of errors relied on is nonessential. But the argument has no force if it be true that the error point and the propositions or points together are but one thing. In that case, the penalty would, of course, not single out one, but would denounce omission to have either.

In *Wine v. Jones,* we held squarely that the require- ment of "Errors Relied on for Reversal" does not violate that statute which abolished "Assignment of Errors." That is done upon the reasoning that these error points are not such "Assignment of Errors." If they are not such "assignment," what are they? Surely, it is not to be held that, because they are not such assignment, they are a re- quirement that serves no purpose. The manifest purpose is that they shall be a part of the statement of what is pre- sented for review—to make clear the purpose and scope of the law propositions. Therefore, the true construction is that, since the errors relied on for reversal are not a substi- tute for the old-time assignment of errors, and yet are in- tended to accomplish something, that this statement of er- rors relied on for reversal and the proposition and brief point together constitute that for the omission of which the

rule attaches the penalty.    The wording of the rule itself indicates this:

"The brief shall contain, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration.    *    *    *    No *alleged error or point* not contained in this statement of points shall be raised afterwards," etc.

Stress is laid by the majority on the fact that, in a statement found "at the beginning of what is denominated the brief and argument," it is said by the appellee that "the only error that can now be argued before the court is that attributable to the trial judge in directing a verdict at the close of plaintiff's testimony in favor of the defendants." The thought of the majority seems to be that, since the error complained of is single, and this statement in argument is made very early in the argument, that somehow this obviates the absence of assigning error relied on for reversal.    If the error point be demanded, I am unable to see how anything whatsoever said at any stage of the extended argument can in any case cure the omission of the error point.    Where there is an omission to make points that are mandatorily required to be made, the contents of the argument *in extenso* are utterly immaterial.    This must be so for several reasons that seem to me conclusive.    First, since the rule provides that "no alleged error or point not contained in this statement of points shall be raised afterwards, either by reply brief or in oral or printed argument" (Rule 53), it is a logical impossibility to cure the failure to make the statement of points by means of what is contained in the argument.    Since the rule forbids us to consider the argument on a point not made in rule manner, the omission which deprives us of the use of the argument of necessity makes it impossible to cure the omission by what might be found in the argument were we permitted

to consider it. The contents of a paper of which one is forbidden to take notice become quite immaterial.

It requires a waiver to consider matter asserted only in the argument *in extenso.* *State v. Stansberry,* 182 Iowa 908, 920. We have held it to be important that an appellant develop and clearly state in his original brief the points or propositions relied on for a reversal, because he must stand or fall thereon; that an attempt through a subsequently filed amended brief to depart from the propositions contained in the original brief may be successfully met by a motion to strike. *State v. Thomas,* 173 Iowa 408. To like effect is *Dodge v. Grain Shippers Mut. F. Ins. Assn.,* 176 Iowa 316.

Finding a statement in *Mennenga v. Mennen,* 182 Iowa 1147, that certain assignments should be considered waived because they were merely restated in the brief, but not argued, we said, in *Powers v. Iowa Glue Co.,* 183 Iowa 1082, that, while we were in no doubt that the mere restatement of an assignment of errors which was not argued presented nothing for review, that, if any inference was to be drawn that the mere restatement of an assignment will warrant review if that statement be argued, then this language of the *Mennenga* case "should be limited to exclude such interpretation." We next considered the language of Rule 55, that the brief *"may* be followed by an argument in support of such brief, which shall be distinct' therefrom," and said that this meant that the right of review did not depend upon elaborating an assignment of error by argument, but upon presenting, "under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration." And we continue:

"The statement of an error relied on and the point demanded by the rule made in rule manner is essential. Failure to make it cannot be atoned for by argument. The

rule itself says, in terms, that an error shall not be available in *argument* if there be an omission to furnish the rule brief point or proposition." And we say that this is the holding in *Wine v. Jones,* 183 Iowa 1166. Several cases in this court have since followed the *Powers* case.

I would affirm.