GERHARD *v.* FORD MOTOR CO.

1. EVIDENCE—CONCLUSIONS—CROSS-EXAMINATION.

In an action for personal injuries, the exclusion of plaintiff's answer, on cross-examination, to a question calling for a conclusion as to the cause of the injury, when counsel was allowed to further cross-examine the witness as to the details of the occurrence, was not error.

2. HIGHWAYS AND STREETS—PERSONAL INJURIES — NEGLIGENCE — AUTOMOBILES.

Plaintiff, a "jumper" on a delivery wagon, was injured by being struck by an automobile. The evidence on the part of plaintiff tended to show that before jumping off the left side of the wagon he looked back and saw no automobile coming; that his horse was walking and he jumped alighting about a foot and a half from the side of the front wheels, and took some parcels from the wagon and was walking slowly by the side of the wagon waiting for it to pass so that he could go back of it to the sidewalk, when he was struck in the back and left side by an automobile; that the machine knocked him to the pavement and dragged him 66 feet and ran 100 feet farther before it was stopped; that the driver of the machine had a clear space of 30 feet to the left of plaintiff's wagon in which to pass. The driver of the automobile testi-

fied that he saw the plaintiff's rig, knew what it was, and knew the character of the business in which it was engaged. *Held,* that the question of the negligence of the parties was properly submitted to the jury.[1]

Error to Wayne; Hosmer, J. Submitted January 21, 1909. (Docket No. 159.) Decided March 3, 1909.

Case by Clements Gerhard, by next friend, against the Ford Motor Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Fred L. Vandeveer,* for appellant.

*Lillis & Hymers (Pelton & McGee* and *George A. Safford,* of counsel), for appellee.

MOORE, J. The plaintiff was injured on September 10, 1906, at about 5:30 p. m. He was two or three months over the age of 14. The accident occurred on Piquette avenue, which runs at right angles to Woodward avenue. Plaintiff was employed as a "jumper" on a delivery wagon, and in the performance of his duties it was necessary for him to follow the instructions of his driver and deliver packages to the proper addresses. The first street east of Woodward avenue, and parallel thereto, is John R., and next east of John R. is Brush street. The delivery wagon approached Piquette avenue from the south on John R. street. Upon reaching Piquette avenue, the driver turned his horse to the right on Piquette avenue, and drove east toward Brush street. An automobile controlled by one of the employés of the defendant came to Piquette avenue from Woodward avenue coming from the south. When Piquette avenue was reached, the driver turned his automobile to the right, going in an easterly direction. When the wagon was a few feet from

---

[1] As to duty of pedestrian to look out for automobile cars, see note to *Hennessey* v. *Taylor* (Mass.), 3 L. R. A. (N. S.) 345.

As to law governing automobiles generally, see note to *Christy* v. *Elliott* (Ill.), 1 L. R. A. (N. S.) 215.

Brush street, the automobile attempted to pass on the north side of it, and struck the boy, who was badly injured. The case was tried before a jury who rendered a verdict for plaintiff. A motion was made for a new trial for the following reasons:

(1) That said verdict was against the clear weight of the evidence offered and received at the trial of the said cause.

(2) That the evidence establishes that the plaintiff was guilty of negligence, and that a verdict of no cause of action for the defendant should have been directed.

(3) Because of the refusal of the court to peremptorily give those instructions of the defendant which would have ended the case, and not permitted the same to have gone to the jury for its consideration and deliberations.

The court overruled the motion, giving his reasons therefor in writing. The case is brought here by writ of error.

There are eleven assignments of error grouped by counsel under three subdivisions. The first of these, as stated by counsel, is as follows:

"The following question was asked plaintiff: 'And this accident happened simply because you were in a real hurry to get the deliveries made and you jumped down off the wagon, didn't you?' Counsel feels as though it should have been permitted a good deal of latitude in the cross-examination of the plaintiff, especially in view of the testimony that had preceded this question."

The question should be taken in connection with what preceded and what followed it. The record shows as follows:

"*Q.* Now, as a matter of fact, Clements, you were in a good deal of a hurry that night to make this delivery up on Brush because it was getting late, wasn't it?
"*A.* Yes, sir.
"*Q.* It was getting late, about half past 5, wasn't it?
"*A.* Yes, sir.
"*Q.* And the quicker you got your deliveries made the quicker you got home?
"*A.* Yes, sir.

"*Q.* And this accident happened simply because you were in a real hurry to get the deliveries made, and you jumped down off the wagon, didn't you? (Objected to as incompetent and immaterial.)

"*The Court:* I think I will exclude that. Exception to defendant.

"*Q.* You were in such a hurry to get these deliveries made that you jumped down off of the wagon without stopping to look if an automobile was coming, did you not?

"*A.* I looked before I got down off of the wagon, first looked at the side of the wagon and did not see it, and was struck just after I got down out of the wagon. I was taken over to the north curb of the north side of Piquette avenue; that is, after being picked up after the automobile had struck me. I was on that side of the street, and it was the closest to carry me."

It is apparent the question called for the conclusion of the witness. It is equally apparent that counsel was not prevented from cross-examining fully the plaintiff in relation to the occurrence.

The next subdivision relates to whether a verdict should have been directed in favor of defendant. In support of his contention, counsel cite 1 Moore's Treatise on Facts, § 161, *Payne* v. *Railroad Co.*, 136 Mo. 562, and other authorities. The law applicable to the case is not in dispute. The troublesome question is one of fact. The plaintiff claims that, before getting off the wagon to deliver his package, he looked toward Woodward avenue and saw no automobile, that the horse was then walking; that plaintiff jumped off the wagon with one bundle under his arm, alighting about 1½ feet from the wagon and a few feet in advance of the front wheels; that he then took two small packages from the bottom of the wagon just back of the dash, then began walking at the side of the wagon to let the horse pass so he could go around back of it; that he had taken about 5 or 6 steps, when the automobile struck him in the back and left side; that he was knocked to the pavement, pushed and dragged across Brush street for a distance of about 66 feet, and dropped free of the auto;

that after plaintiff became free of the machine it ran about 100 feet before stopping. It is also his claim that no warning was given of the approach of the automobile, and that, when he looked, it was either so near the south curb that his point of view was cut off by the wagon or else that it was still in Woodward avenue approaching him at a great rate of speed, as was indicated by the distance the machine traveled after he was struck. It is also the claim of plaintiff that the driver had a clear space of 30 feet between the wagon and the north curb in which to pass, and that it was gross negligence to strike him with the machine when he was walking by the side of the wagon within 1½ feet of it, with his back toward the oncoming machine. There was testimony tending to support these various claims of the plaintiff.

In an action for injuries to a street car conductor who was struck by an automobile as he stepped from the forward end of his car to pass to rear of same, the evidence disclosed that the car which was bound south had come to a full stop before plaintiff alighted; that at that time the automobile was 15 to 18 feet distant, proceeding in a southerly direction at the rate of from 3 to 5 miles an hour, parallel and about 3 feet away from the track on which the car was standing, with a clear space of from 12 to 15 feet between the track and the curb of the westerly sidewalk; that the operator of the automobile had a clear view ahead of him; and that the plaintiff, as he stepped from the car, looked in the direction in which the car was to proceed, and it was held that questions of negligence and contributory negligence on the part of the plaintiff were for the jury. In this case the court said that the plaintiff had a right to rely upon the exercise of reasonable care on the part of the drivers of vehicles to avoid causing injuries to persons in the street, and that his failure to anticipate the omission of such care did not render him negligent. *Cæsar* v. *Fifth Avenue Coach Co.*, 90 N. Y. Supp. 359.

It has been held that one running an automobile is

bound to take notice of a person standing in the roadway conversing with a friend sitting in a carriage, and to use care not to injure him. *Kathmeyer* v. *Mehl* (N. J. Sup.), 60 Atl. 40.

There is no imperative rule of law requiring a pedestrian when lawfully using the public ways to be continuously looking or listening to ascertain if auto cars are approaching, under the penalty that upon the failure so to do, if he is injured, his own negligence must be conclusively presumed. *Hennessey* v. *Taylor*, 189 Mass. 583 (3 L. R. A. [N. S.] 345). In this case the plaintiff testified she looked to see if there was any danger, but did not observe the defendant's automobile, nor hear any sign of its approach sounded. A witness called by her, who stood by her side before she attempted to cross the street, had observed the defendant's machine at some distance; but it was not shown that she communicated such information to the plaintiff. Upon such evidence the court said that no such balancing of probabilities by plaintiff, with a willingness to take the risk of safely getting over before the defendant came up, was shown as to convict her of contributory negligence, as a matter of law; and that, even if she had seen the defendant's machine approaching, and decided it was sufficiently distant to enable her safely to pass, she might have been found by the jury to have exercised due care, though the accident proved her judgment erroneous. See, also, *Spina* v. *Transportation Co.*, 96 N. Y. Supp. 270; *Buscher* v. *Transportation Co.*, 106 App. Div. (N. Y.) 493.

The testimony of the driver shows that for some time before he overtook the delivery wagon he saw it, that he knew what it was:

"I recognized the rig as a delivery wagon, but do not know as I ever saw that particular wagon on the street, but have seen that type of wagons before. I was thoroughly familiar with the kind of a wagon it was, and knew it was a wagon that was used in delivering packages, and I knew from observation about the streets of

Detroit the character of the business that the people in charge of the wagon was doing. * * * I did not know whether one delivered the parcels and another drove the horse, but I did know that some one in charge of the wagon was in the habit of getting off of the wagon and running into houses to deliver parcels."

In view of the testimony, it was not a question of law to be determined by the judge in a directed verdict, but was a question of fact to be submitted to the jury under proper instructions. The other assignments of error do not call for discussion.

Judgment is affirmed.

BLAIR, C. J., and GRANT, MONTGOMERY, and McALVAY, JJ., concurred.