EDNA WALMER-ROBERTS, Appellee, v. T. J. HENNESSEY,
Appellant.

NEGLIGENCE: Proximate Cause—Injury as Cause of Ailment. Testimony tending to show (1) that a person was free from physical ailments prior to an injury; (2) that, immediately after said injury, the party did have such ailments; (3) that said ailments did exist, in fact, according to expert examinations had several months after the injury; and (4) that said ailments *might* be caused, in the opinion of experts, by such an injury, will support a jury finding that the said ailments were caused by said injury.

APPEAL AND ERROR: Harmless Error—Curing Error. Error may not be predicated on the act of receiving in evidence an ordinance, when all matters on which the ordinance has bearing are fully and carefully withdrawn from the jury.

WITNESSES: Privileged Communications—Physician Called by Stranger. On the question of privilege, it matters not whether a physician is called, in the emergency of an accident, by the injured party, or whether the physician is, with the acquiescence of the injured party, called by a stranger. In such a case, complaints by the injured party to the physician and matters discovered by the physician as a result of the examination are privileged, *even when the complaints and examination are in the presence of strangers*.

WITNESSES: Privileged Communications—Presence of Strangers—Waiver. An injured party who, under the emergency of an accident, submits to an examination of his person by a physician, and makes to the latter communications relative to his physical condition, does not waive the right to insist that the examination and communications are privileged, because of the fact that they were made in the presence of strangers.

WITNESSES: Privileged Communications—Waiver by Cross-Examination. Right to insist that an examination of an injured party by a physician and professional communications made to the physician are privileged, is not waived by the injured party's submitting to cross-examination relative thereto.

WITNESSES: Impeachment—Statement of Opinion. A witness who has testified fully as to all the facts attending an accident, as seen

by him, may not be impeached on the basis of a question whether he had not, on a certain occasion, stated that one of the parties to the accident *"was not to blame for the accident."*

**NEGLIGENCE:   Contributory Negligence—Standing in Public Street.** It is not negligence *per se* for a person to stand in a public street in a crowd, and wait for an on-coming street car at a point where passengers are taken aboard, or, under such circumstances, to stand with one's back to an automobile which was first seen when it was 200 feet distant.   (Facts reviewed in detail.)

**NEGLIGENCE:   Automobile Accident—Failure to Give Signal or to Stop.**   Evidence relative to defendant's failure to give signal of his approach to a crowd of people waiting in a public street for a conveyance, and relative to his failure to bring his car to a stop, reviewed, and held ample to present a jury question on the issue of defendant's negligence.

**TRIAL:   Instructions—Conflicting and Contradictory.**   Instructions are not conflicting and contradictory which (1) in one part declare that a person in a public street must make reasonable use of his *sense of sight*, and (2) in another part declare that a party about to board a street car *"is not absolutely required to keep a lookout for automobiles at that point."*

**TRIAL:   Instructions—Correct But Nonexplicit.**   Correct but nonexplicit instructions are all-sufficient, in the absence of a request for greater elaboration.

**NEGLIGENCE:   Operating Vehicle Under Traffic Signal.**   A signal from a traffic officer to the operator of a vehicle to pass over an intersection in no wise absolves such operator from the duty, in so passing over, to exercise reasonable care in the matter of signals and control of car.

**NEW TRIAL:   Verdict—Excessiveness—$1,000.**   Evidence reviewed, and held that a verdict of $1,000 for personal injury was not excessive.

*Appeal from Harrison District Court.*—EARL PETERS, Judge.

MARCH 15, 1921.

THIS is an action at law for injuries claimed to have been suffered by the plaintiff by reason of being struck by an automobile driven by the defendant. The jury returned a verdict in favor of the plaintiff, and the defendant appeals.—*Affirmed.*

*Robertson & Havens,* for appellant.

*Frank E. Northrop* and *Kennedy, Holland, DeLacy & Horan,* for appellee.

FAVILLE, J.—The accident in question occurred in the forenoon of Monday, December 16, 1918, on Broadway, in the city of Council Bluffs. Broadway is a street running east and west, and Pearl Street runs north and south, and terminates in Broadway. Each of said streets is about 65 feet in width, from curb to curb. There are two lines of railway tracks on each of said streets. The car tracks are in the middle of the streets. The cars coming to the north on Pearl Street turn, as they enter Broadway, to the east and to the west. Cars frequently make a stop on Pearl Street near the intersection with Broadway, and then pass on a curve to the west and stop again to receive passengers, after they clear the curve and are headed in a westerly direction on Broadway. It is the custom of passengers to get on such west-bound cars at a point about 45 feet west of the center of the intersection of the two streets. At the time of the accident in question, a traffic officer was stationed near the center of the intersection of the two streets. At that time, a street car was approaching from the south on Pearl Street, and stopped near the point of intersection with Broadway, where the switch was thrown, permitting the car to pass onto the curve and pursue its course westward on Broadway. At that time, there was a crowd of people, variously estimated by witnesses at from 5 or 6 to 35 or 40, that was waiting to board the car going westward toward the city of Omaha. These people were scattered in the street between the north rail of the track on Broadway and the curb. This was the customary place where the west-bound car stopped to receive passengers.

Under such circumstances, the appellant approached the street intersection, driving westward on the north side of Broadway. He was driving a Hudson Super-six automobile, weighing 3,800 pounds, and containing five passengers, at the time. As he approached the intersection of the two streets, and when at a place about 40 feet east of the center of the intersection where the traffic officer stood, he sounded his horn, which attracted the

attention of the officer, who thereupon signaled the appellant to proceed westward with his car. At that time, the appellant's car was traveling at about 10 miles an hour. The traffic officer testified that, in signaling the appellant to go westward, he pointed to the center of the street where the car tracks were, and testifies that there was no obstruction to the traffic at that point. As the appellant proceeded westward with his car, the appellee, with others who were about to board the street car, was in the street between the north rail of the street car tracks and the curb. After receiving the signal from the traffic officer, the appellant drove his car straight on westward on Broadway, in a course toward where the crowd of people was congregated, awaiting the approach of the street car. At that time, the appellee was facing toward the west, and was standing about 2 or 2½ feet from the north rail. She was struck by the appellant's car, and thrown to the pavement, and injured.

At the instant of the collision, the appellant was driving his car at a slow rate of speed, estimated by the witnesses at from 2 to 5 miles an hour. The evidence to this point is practically without dispute in the record. There is, however, a sharp conflict with regard to just what occurred at the instant of the collision. It is the contention of the appellant, supported by witnesses who were with him in the car, that, after he received the signal from the traffic officer to pass westward, he again sounded his horn repeatedly, as he proceeded westward toward the crowd of people. On the other hand, the traffic officer testified that the appellant gave but the one blast of the horn, which was when he was about 40 feet from the officer and the appellee, and other witnesses testified that they heard no sound of the horn of the appellant's car as he moved westward toward the crowd.

It was also the contention of the appellant, supported by his witnesses, that, as he approached the crowd, the appellee stepped backwards directly in front of the appellant's automobile, and was struck by the fender. On the other hand, the appellee, a lady with whom she was talking, and the traffic officer, testified that the appellee did not change the position of her feet or take any step as the automobile approached, but merely turned her head.

Again, it was the contention of the appellant, supported by his witnesses, that his automobile merely pushed the appellee to the pavement, and that the automobile did not pass over her; while it was the contention of the appellee and witnesses in her behalf that the left front wheel of the automobile ran over the right foot and ankle of the appellee.

We have not attempted to review in detail the testimony of the several witnesses, but merely to outline such of the facts in the case as are essential to the determination of the questions before us. At the outset, we are confronted with 49 errors relied upon for a reversal, which, however, are somewhat condensed in the propositions argued by counsel for appellant.

I.  Some time after the injury, the appellee was attended by a physician, who testified upon the trial in regard to the physical condition of the appellee. During the trial, three physicians were appointed by the court as a commission to examine the appellee, and did so, and were all witnesses. The appellee testified that, before the time of the injury, she had been a well and strong woman, and that, immediately after the injury, she had ailments, some of which existed at the time of the trial.

1. Negligence: proximate cause: injury as cause of ailment.

Error is predicated upon the admission of the medical testimony. A physician testified in behalf of the appellee that he was called to treat the appellee professionally in May following the accident of December, and continued to treat her until some time in July; that he found her in a nervous condition; that she had tenderness and swelling on her right side; and that she seemed to have some trouble with her female organs, when he first examined her. Each of the physicians composing the commission that examined her during the trial testified that, at that time, there existed some diseased condition of the pelvic organs. All of these witnesses testified to the general effect that an accident *might* have caused this condition of the appellee's female organs, but that such condition could have been brought about by other causes. They testified, in substance, that various things could have caused the condition which they described; that it might have been caused by an injury or by a miscarriage or something of that kind, and that such a condition might exist in a married woman, whether she had been in an accident or

not.  The appellee did not consult any physician about the con-
dition of her female organs until about a week after her marriage,
which occurred in May, 1919.  Upon this situation of the evi-
dence, it is the contention of the appellant that:

"The fact that the plaintiff claims in her testimony that
she never had been sick a day before the accident, and had never
had any trouble with her female organs before that time, but
immediately began to have pain and trouble with them after
the accident, which continued up to the time of the trial, in
the light of all the other facts and circumstances shown in the
record is *insufficient* to prove that the disease of her female
organs that Dr. McColm testifies he found in May, 1919, after
she was married, and the condition of her female organs and
nervousness, of which there were some symptoms at the time of
the trial, were the result or probable result of any injury or
injuries received by her in said accident."

Appellant relies upon our holding in *Fleming v. Chicago,
R. I. & P. R. Co.*, 153 Iowa 386.  This was an action for negli-
gence in obstructing a stream, whereby premises were flooded
with water, and it was alleged that sickness resulted to an in-
habitant of the premises.  The evidence conclusively showed
that this person was afflicted with tuberculosis for some months
prior to the flooding of the premises.  She had been described
as being "in the last stages of consumption."  We reviewed the
evidence, and held that it was too uncertain and speculative to
support a finding that the defendant's negligence caused in-
creased suffering to the patient by the aggravation of the disease.
We said:  "Cases involving personal injury present a some-
what different question."  We are still inclined to this view, and
further comment seems unnecessary.  Such evidence in personal
injury cases on proper questions has been too long recognized
by this court to now require further review or discussion.  See
*Sachra v. Town of Manilla*, 120 Iowa 562; *Sever v. Minneapolis
& St. L. R. Co.*, 156 Iowa 664, and many cases cited therein.

II.  It is claimed that the court erred in admitting in evi-
dence certain ordinances of the city of Council Bluffs, regulating
the movement of automobiles in said city.  Section 30 of said
ordinances had reference to the rate of speed of automobiles.
The record shows that, on the defendant's motion for a directed

verdict, the court sustained the same in part, and expressly withdrew from the consideration of the jury all grounds of negligence alleged in plaintiff's petition respecting excessive rate of speed and failure to observe the ordinance of the city of Council Bluffs with respect to said matter. This was also expressly covered by the instructions to the jury, and there was no error in the rulings of the court in this regard.

2. APPEAL AND ERROR: harmless error: curing error.

III. Immediately after the accident, the appellant and the traffic officer conducted the appellee to the office of Dr. Treynor, who made an examination of her at said time. His first was a "surface examination," in the presence of the appellant, the traffic officer, and the doctor's office girl. The physician, shortly afterward, on the same visit, made an X-Ray examination of appellee's arm. Questions propounded to the physician in regard to complaints made to him at said time by the appellee, and as to the result of the examination so made, were objected to as being privileged, and the objection was sustained.

3. WITNESSES: privileged communications: physician called by stranger.

Error is predicated upon this ruling; and it is claimed that the testimony was not privileged, because what was said and done between the doctor and the appellee was in the presence of the traffic officer and the appellant, and therefore was not privileged. It is further claimed that the physician was employed by the appellant, and not by the appellee, and also that, by offering the testimony of the traffic officer and herself in regard to the fact of going to the doctor's office, the privilege was waived.

4. WITNESSES: privileged communications: presence of strangers: waiver.

The fact that the physician was one employed by the appellant, and that the appellee had not called or employed him as her own doctor, makes no difference, in so far as the question of privilege is concerned, under the facts in this case; for it appears that the physician not only examined the appellee in his office, but called on her afterward in her home, and advised her as to a course of treatment. In *Battis. v. Chicago, R. I. & P. R. Co.*, 124 Iowa 623, we said:

"If, upon request or upon his own motion, he assumes to advise or administer treatment to the patient, and the latter in any manner acquiesces therein, the physician thereby casts aside

his relation as an employee of the company, and transfers his allegiance to the patient. In such instances, a case is presented where one cannot serve two masters at one and the same time. The allegiance of the physician must be wholly upon one side or the other. It matters not, in this connection, who calls him in the first instance, or who pays him. He may present himself at the side of the patient on his own motion, and he may not expect, or in fact receive, pay.''

Under the statute, Section 4608, Code Supplement, 1913, the prohibition does not apply to cases where the party in whose favor the same is made, waives the rights conferred. It is claimed that the appellee did so in the instant case, by offering her own testimony and that of the traffic officer. Neither of these witnesses testified regarding the examination made by the doctor, or to any communication, except that appellee said that her ankle hurt. The doctor called at her house twice after that, and told her to bathe her arm in hot water. The doctor was offered as a witness for the defendant. He was asked:

''You may state what you found in connection with her claim as to personal injuries at that time.''

And the objection that the testimony was privileged was sustained. The doctor was further asked:

''Doctor, from the complaint made by plaintiff, Edna Walmer, at that time, and from your examination of her,—physical examination,—you may state whether or not you found any evidence of any injury at all to either the ankle or foot of plaintiff, Edna Walmer.''

The objection that it was privileged was sustained.

Under this record, there was no error in the ruling of the court. The physician was within the prohibition of the statute as to any matters which he learned by observation and examination, as well as by a verbal communication. *Prader v. National Mas. Acc. Assn.*, 95 Iowa 149.

The basis of the alleged waiver was wholly testimony elicited from the appellee and from the traffic officer on cross-examination. In *Burgess v. Sims Drug Co.*, 114 Iowa 275, we said:

5. WITNESSES: privileged communications: waiver by cross-examination.          ''We are not willing to hold that the failure to insist on this privilege makes the testimony which he may give on cross-examination volun-

tary, in such sense as to constitute a waiver of his privilege with reference to the communication to his attorney or physician.''

See, also, *McConnell v. City of Osage*, 80 Iowa 293.

The appellee did not waive her right to object to the testimony of the physician as to the result of the examination made by him at the time referred to. Her admissions on cross-examination, so far as they went, in regard to her having told the physician about her suffering pain, would not open the door to permit the testimony of the physician as to the results of his examination, nor would the mere fact that, under these circumstances, she was taken to the doctor's office, and, in the presence of the officer and the appellant, submitted to a ''surface examination,'' waive her rights to object to the testimony of the physician. The ruling of the trial court, upon this record, was clearly correct.

IV.  Error is urged in the ruling of the court sustaining appellee's objection to a question propounded to the appellant

6. WITNESSES: impeachment: statement of opinion.

regarding a statement made by the traffic officer in the presence of the chief of police. The specific question was as follows:

''State whether or not, at that time and place and in that conversation, he [the traffic officer] made a statement to the chief of police that you were not to blame in any way for the accident.''

Objection to this question was sustained. On cross-examination, the traffic officer had testified:

''I do not recollect telling the chief at that time and place that Mr. Hennessey was not to blame in any way for the accident.''

The theory of the appellant is that the testimony was admissible for purposes of impeachment of the traffic officer. The objection that the question asked the appellant was immaterial, without more, is entirely sufficient to sustain the ruling of the court in this matter. The officer testified at length, both on direct and cross-examination, as to all that he observed in regard to the accident. The above question, when propounded to the officer on cross-examination, would doubtless have been excluded, if timely objection had been interposed thereto. In any event, it could not be made the basis for the question propounded to the appellant. The ruling of the court was correct.

V.   It is urged by appellant that the appellee was guilty of contributory negligence as a matter of law, and that the court erred in not directing a verdict for the appellant on that ground.

7. NEGLIGENCE: contributory negligence: standing in public street.

The particular claim of the appellant in this regard is that the evidence shows that the appellee saw the appellant's automobile approaching her from the east about 200 feet away, and that, from that time until the time of the collision, she did nothing to protect herself from a collision with the on-coming automobile, until the lady immediately in front of her told her to "look out."

We have heretofore described the situation and the circumstances surrounding the accident.   The question is whether or not they were sufficient, as a matter of law, to charge the appellee with contributory negligence.   As we have already indicated, there was a dispute in the testimony in regard to whether or not the appellee stepped in front of the approaching automobile, and also whether the horn of the automobile was sounded as it approached the appellee, so that, if she had been listening, she would have heard its approach.   It is the contention of the appellee that, while she saw the automobile approaching from the east some 200 feet away, and on the east side of Pearl Street, she was not in duty bound to watch the automobile continually from that time on, because she had reason to believe that she would not be run down by the driver of the automobile; and also that she was not legally bound to watch the automobile and determine whether it would proceed westward to where she was about to take the street car, or would turn south on Pearl Street, or proceed south of her on Broadway.

Adjudicated cases are of comparatively little value in assisting us in arriving at a determination of whether or not the appellee, in a case of this kind, is guilty of contributory negligence, for the reason that it is a rare circumstance to find two cases that are identical in their facts.   If fair-minded and reasonable men would differ on the question of fact as to whether or not the appellee was guilty of contributory negligence, then the case should have been submitted to the jury on that question. We are asked to hold that, under the circumstances of this case, the appellee was guilty of contributory negligence, as a matter

of law. The appellee and the appellant each had a right to the use of the street. It was not negligence for the appellee to leave the curb and walk to the usual place where passengers took the street car for Omaha, nor was it negligence, as a matter of law, for her to stand with a crowd of people close to the car track, for the short space of time that the car was making the turn from Pearl Street into Broadway, a total distance of about 110 feet. At the time the appellee left the curb and went with the crowd of passengers to the position near the car track, the appellant's automobile was some 200 feet to the eastward. Under the circumstances, we cannot hold, as a matter of law, that the appellee was guilty of contributory negligence in failing to watch continuously the movement of the automobile from the time she observed it, 200 feet away. There were at least three avenues open for the movement of the automobile, without endangering the appellee. The automobile could have passed to the north of the crowd of passengers, and between them and the curb, without striking any person. The automobile could have turned south on Pearl Street, or it could have passed on the car tracks ahead of the approaching street car and south of the crowd of passengers, at the place indicated by the traffic officer to the driver of the automobile.

The appellee was not guilty of contributory negligence, as a matter of law, under these circumstances, in standing with the crowd of passengers awaiting the street car, and in failing, during that time, to watch the automobile and determine which one of these three avenues the driver would choose to follow. It was not contributory negligence, as a matter of law, after the appellee knew that the automobile was 200 feet away, for her to stand with her back toward the automobile, knowing, as she did at the time, the conditions of the street and the opportunity for the driver of the automobile to avoid collision with the crowd of passengers. While the circumstances do not excuse the appellee from using ordinary and reasonable care, it is true that the presence of the crowd of persons with her of itself lent to her position a degree of security: that is to say, it is obvious that a person with a crowd standing together, under the circumstances disclosed by this record, would have knowledge that the presence of such crowd on the street would, of itself, at-

tract the attention of a driver of an approaching car; and, while it would not relieve the appellee of the necessity of using reasonable and proper care, it would, to some extent at least, be some protection to the appellee. We do not mean by this that the appellee could act carelessly or negligently, merely because she was in a crowd that was acting carelessly or negligently; but the presence of a crowd would, of itself, be notice to the driver of an approaching car of a substantial impediment in his pathway, and would, to that extent at least, be some assurance to the appellee of greater safety than if she stood on the street alone. The case of *Ouellette v. Superior Mot. & Mach. Works,* 157 Wis. 531 (147 N. W. 1014), is somewhat similar in its facts. In that case, the plaintiff was standing in the intersection of two streets in the city of Superior, between the curb and the street car tracks, waiting to board a street car, when he was struck by an automobile. He was standing at the place where pedestrians usually and customarily stood, preparatory to boarding the street car, and about 4 feet from the track. He did not move from the time he took his position until struck by the automobile. It appeared that the automobile was running very slowly at the time; that the plaintiff was observed by the driver and other occupants of the car; that the horn of the automobile was sounded; that there was room for the automobile to pass between the plaintiff and the curb; and that the plaintiff stepped backward toward the curb in front of the automobile, just as it was about to pass him. The similarity between the facts in the cited case and those of the instant case is obvious. The court said:

"The plaintiff apparently paid no attention to the automobile horn. He says he did not hear it. He was not keeping a lookout for vehicles approaching him from the rear. However, he testifies that he had been standing where he was but a very few seconds; that one street car had run by him which he desired to take, and that he was intent on signaling another, so as not to be delayed on his homeward journey, and we think, on the whole, it was a question for the jury to answer whether or not he exercised, under the circumstances, that degree of care

and prudence which is ordinarily exercised by the great mass of mankind under the same or similar circumstances."

In *Arseneau v. Sweet,* 106 Minn. 257 (119 N. W. 46), the plaintiff was standing on a curb near the intersection of two streets in the city of Minneapolis. She saw the street car coming down one of the streets, and stepped into the street within 2 or 3 feet of the street car tracks. She did not see the approaching automobile, and did not hear any horn or signal. The court said:

"Respondent was in lawful possession of the street. She had a right to walk out from the curb to the car tracks, in anticipation of the approaching car, and, if she took a position in the street within 3 or 4 feet of the car tracks with the intention of boarding the approaching car, she was not required absolutely to keep a lookout for vehicles at that point. The law governing the conduct of foot passengers and vehicles in the public streets is well settled. *Stallman v. Shea,* 99 Minn. 422 (109 N. W. 824); *Thies v. Thomas,* (Sup.) 77 N. Y. Supp. 276; Huddy, Laws of Automobiles, 58. Respondent had no exclusive right to the street for the purpose of boarding a street car. She was not entitled to take a position even 3 or 4 feet from the car tracks and remain oblivious to her surroundings. But she was not guilty of contributory negligence simply because she did not look, and did not see or hear the approaching machine. Her attention was naturally concentrated on the street car, and she was entitled to assume that others would exercise due care with reference to her position. The jury accepted her explanation of the occurrence, and whether she was exercising due care, under the circumstances, was a question of fact."

We have frequently had occasion to consider the respective rights and duties of pedestrians and drivers of automobiles upon the public streets. In *O'Laughlin v. City of Dubuque,* 52 Iowa 746, we held that a foot passenger has a right to cross a street at any point, and is not restricted to the regular crossing. This rule has been adhered to and reaffirmed by us in numerous cases. *Bell v. Incorporated Town of Clarion,* 113 Iowa 126; *Finnegan v. City of Sioux City,* 112 Iowa 232; *Middleton v. City of Cedar Falls,* 173 Iowa 619; *Wine v. Jones,* 183 Iowa 1166. It is also true that a pedestrian is not required, as a matter of law, to

look both ways, or listen for automobiles or motor vehicles, before undertaking to cross a street, and is not bound to constantly keep a lookout for approaching vehicles. *Wine v. Jones,* supra; *Baker v. Close,* 204 N. Y. 92 (97 N. E. 501); *Adler v. Martin,* 179 Ala. 97 (59 So. 597); *Gerhard v. Ford Motor Co.,* 155 Mich. 618.

In *Wine v. Jones,* supra, we had occasion to discuss the question of contributory negligence, where a pedestrian on a street was struck by a motor vehicle. In that case, we said:

"The plaintiff testified that, when struck, she was facing east, or northeast, about 6 feet from the walk, and had no occasion to turn back any, after starting to cross the street. The real issue, then, was whether plaintiff, after walking out into the street, turned or backed in front of the motorcycle, as testified to by defendant, which must have been found to constitute negligence, or whether she was struck when out in the street 6 or 8 feet, leaving ample room for the passage of the motorcycle. The evidence of the greater number of witnesses supported the latter view, and this conclusion would exculpate plaintiff of the charge of negligence. The issue as to whether she contributed to her injury by her own fault was rightly submitted to the jury."

In the instant case, it was a question for the jury to determine whether the appellee was guilty of contributory negligence, under the circumstances. It was for it to determine, under the evidence, whether the appellee negligently stepped backward into the appellant's automobile, as claimed by the appellant, or whether she was standing still, as claimed by the appellee and her witnesses, with sufficient space between her and the curb for the appellant to have driven his automobile.

In *Rolfs v. Mullins,* 179 Iowa 1223, we said:

"No pedestrian has a right to pass over a public thoroughfare without regard to approaching vehicles, nor has any vehicle driver a right to appropriate the public street without regard to its use by pedestrians. The test to be applied in this case, as in others, is: What would a person of ordinary prudence have done under the circumstances shown? Would reasonable minds differ in answering that question? Some are more cautious than others, and, though some would hesitate to start

without looking up and down the street and keeping a continu-
ous lookout for approaching vehicles, others are content with a
glance about, and immediately proceed. We sometimes think
the latter class are less likely to be injured than the former!
At any rate, the law does not lay down precisely what must be
done to constitute due care, or omitted, to render a person negli-
gent. This depends on the facts of each particular case, and in
this cause, conditions were such as to carry to the jury the issue
as to whether decedent was at fault in any respect.''

In *Gilbert v. Vanderwaal,* 181 Iowa 685, we considered a
case of somewhat similar character, where a pedestrian was
struck by an automobile upon the street of the city of Des
Moines. In many respects, the testimony is of the same general
character as that in the instant case. We said:

''We do not feel warranted, in this case, in saying that the
evidence so clearly establishes negligence upon the part of plain-
tiff that there is no room for difference of opinion among fair-
minded men in relation thereto, and that the cause was not
properly submitted to the jury. *Perjue v. Citizens' Electric
Light & Gas Co.,* 131 Iowa 710; *Delfs v. Dunshee,* 143 Iowa 381;
*Holderman v. Witmer,* 166 Iowa 406; *Bell v. Incorporated Town
of Clarion,* 113 Iowa 126; *Clay v. Iowa Telephone Co.,* 178 Iowa
67.''

The foregoing is pertinent to the situation in the instant
case, and to the law by which we must be governed. The
question of contributory negligence was clearly one for the
jury, and one on which reasonable and fair-minded men might
differ. It was properly submitted to the jury under the instruc-
tions of the court, and its finding cannot be disturbed by us.

As bearing on the question of contributory negligence under
somewhat similar circumstances in other jurisdictions, see *Car-
radine v. Ford,* 195 Mo. App. 684 (187 S. W. 285); *Franey v.
Seattle Taxicab Co.,* 80 Wash. 396 (141 Pac. 890); *Hennessey
v. Taylor,* 189 Mass. 583 (76 N. E. 224); *Griffin v. Taxi Service
Co.,* 217 Mass. 393 (104 N. E. 838); *Gerhard v. Ford Motor Co.,*
155 Mich. 618 (119 N. W. 904); *Epstein v. Ruppert,* 129 Md.
432 (99 Atl. 685).

VI. Appellant urges that the court erred in submitting
to the jury the question of appellant's negligence. The court

withdrew from the jury all grounds of negli-
8. NEGLIGENCE:
automobile acci-     gence except two, as follows:
dent: failure to
give signal or            1.   That the defendant carelessly and neg-
stop.
                     ligently failed to slow down and bring his auto-
mobile to a full stop, upon approaching the plaintiff.

2.   That he carelessly and negligently failed to give any
signal or warning of his approach.

Appellant contends that there was not sufficient evidence
of negligence, in respect to the two items charged, to take the
case to the jury, or to support a verdict against the appellant.
It is unnecessary for us to reiterate the evidence on this proposi-
tion, as we have already set out enough to show that the question
of the negligence of the appellant, like that of the contributory
negligence of the appellee, was for the jury to determine.  The
appellant argues the broad proposition that a driver of an auto-
mobile who sees a pedestrian on the street cannot be guilty of
negligence for failure to bring the automobile to a full stop,
upon approaching the pedestrian, who is apparently oblivious
of such approach.  Such cannot be the law.  Our statute pro-
vides that every person operating a motor vehicle on the public
highways of this state shall drive the same in a careful and
prudent manner.  This is no more than declaratory of the com-
mon law, and simply means that the driver of an automobile
shall use such care as a man of ordinary prudence and care
would exercise, under the same circumstances.  Occasions may
undoubtedly arise where the failure to come to a full stop would
be negligence of a flagrant kind.  To deliberately run down a
pedestrian, apparently oblivious of the approach of an automo-
bile, would be little less than manslaughter.

Whether the driver of an automobile is required, as a pru-
dent and careful person, to bring his car to a full stop, before
striking a pedestrian in the street, depends altogether upon the
circumstances and conditions surrounding the parties at the
time.  In the instant case, the jury might well have found
that it was the duty of the appellant, as a reasonable and cau-
tious man, to bring his car to a full stop, in approaching the
appellee under the circumstances disclosed, when he observed
that the appellee was apparently oblivious of the approach of the
automobile and was facing the opposite direction from which

it was coming. The court cannot hold that, as a matter of law, he was free from negligence in failing to so stop the automobile. It was clearly a question for the jury to determine whether, under all of the circumstances, he acted as a man of ordinary prudence and caution, in driving his car in the manner in which he did. The evidence as to just what transpired was in dispute, and the matter was for the jury to determine.

Again, it is argued that the court erred in submitting to the jury the question as to whether or not the appellant was negligent in failing to give a signal or warning of his approach. The statute provides, in Code Supplement, 1913, Section 1571-m18, as follows:

"Upon approaching a pedestrian who is upon the traveled part of any highway and not upon a sidewalk, and upon approaching a branch or intersecting highway or a curve or a corner or other place in a highway where the operator's view is obstructed for a distance of 200 feet or less, every person operating a motor vehicle shall slow down and give timely signal with his bell or horn or other device for signaling."

It is the contention of the appellant that he complied with this statute, and gave a signal with his horn as he approached the appellee. The traffic officer, the appellee, and other witnesses testified either that the horn was not sounded or that they did not hear it, when they were in position to have heard it if it had been sounded. This clearly made a case for the jury on this question. The giving of the signal to the traffic officer when the appellant came to the east side of Pearl Street could not be held, as a matter of law, to have been sufficient to comply with this statute, or to free the appellant from negligence in failing to sound his horn as he crossed Pearl Street and approached the appellee at the point where she was standing. It was a jury question.

It is argued by the appellant that the necessity for giving a signal is removed when it is apparent that the pedestrian has observed the approach of the automobile and has full knowledge of its presence in ample time to avoid all injury, and we are cited to the case of *Frush v. Waterloo, C. F. & N. R. Co.*, 185 Iowa 156. Conceding the correctness of the proposition that one who has full knowledge of the immediate presence of an ap-

proaching automobile in ample time to avoid all injury may not predicate proximate cause on the absence of warning signals, we fail to see how such rule can avail the appellant in the instant case. As we have already observed, at the time that the appellee saw appellant's automobile coming westward on Broadway, it was on the east side of the Pearl Street intersection, and there were three avenues open for the appellant to follow. Instead of turning south on Pearl Street, or following the line of the car tracks westward and passing south of the group of passengers, or driving close to the curb on the north line of Broadway, between the curb and the group of passengers, the appellant approached nearly in the direct line of the group of passengers, among whom was the appellee. It was for the jury to determine whether the appellant was guilty of negligence in failing to give the signal as he approached the appellee. In other words, it cannot be said, as a matter of law, that, under these circumstances, and not knowing which one of the three avenues the appellant might pursue, the fact that the appellee knew that the automobile was coming westward near the east side of Pearl Street would absolve the appellant from the necessity of giving a warning signal as he pursued his course westward and approached the appellee. The court did not err in submitting this ground of negligence to the jury.

VII. It is strenuously insisted that the court erred in giving instructions which are claimed to be conflicting, con-

9. TRIAL: instructions: conflicting and contradictory.

tradictory, and misleading. In Instruction No. 12½, the jury was told:

"A person upon the traveled portion of a street is required by the law to make such use of her senses of sight and hearing, and to take such measures for her safety and to avoid accident, as an ordinarily prudent and careful person would take under the same or similar circumstances. A failure to make such use of her senses or to take such care and precaution would be sufficient to constitute negligence or want of ordinary care upon her part."

In Instruction No. 13, the jury was told:

"The plaintiff had a right to walk out from the curb to the car track, in anticipation of the approaching car, at the place in question; and if she took a position in the street near the car

track, along with a number of other persons, at the place where the Omaha car customarily stopped, and where passengers for Omaha customarily boarded it, with the intention of boarding the approaching car, she was not absolutely required to keep a lookout for automobiles at that point. She was not entitled to take a position a few feet from the car track and remain oblivious of her surroundings, nor did she have the exclusive right to the street; but she would not be guilty of contributory negligence simply because she did not look and did not see or hear the approaching machine.''

We do not think these instructions are misleading, inconsistent, or confusing. They stated the rule of law correctly. The court explained to the jury that a person upon the traveled portion of a street must use his senses of sight and hearing, as an ordinary prudent and careful person would, under the same or similar circumstances; and, applying the general rule to the facts of this case, the court told the jury that the appellee had a right to walk to the approaching street car and take a position with the other passengers waiting for the approach of the car, and that, when in that position, ''she was not absolutely required to keep a lookout for automobiles at that point.'' See cases supra.

She was entitled to take a position near the car track, and, while she could not remain oblivious of her surroundings, and did not have exclusive right to the street, she would not, as a matter of law, be guilty of contributory negligence simply because, under these circumstances, she did not continue to look for the approaching automobile, and did not see or hear it. We do not think that the jury was misled by these instructions, or that there is such conflict or inconsistency therein as to constitute reversible error.

VIII. Appellant contends that:

''The court should have fully and fairly instructed the jury, without any request therefor, in substance that, if the plaintiff stepped backward against the left fender or in front of the left fender of the defendant's automobile, and she was thereby injured, under the undisputed facts and circumstances in the case, she could not recover, and that its verdict should be for the defendant. And

10. TRIAL: instructions: correct but nonexplicit.

the court should further have instructed the jury that, under the circumstances, the defendant did not have to give any signal, and that he did not have to stop his car before he got to where the plaintiff was.''

No instructions along this line or any other were requested by the appellant. It is unnecessary for us to set out in full the instructions that were given by the court. The issues were clearly defined; the grounds of negligence relied upon were clearly and expressly stated; the law pertaining to contributory negligence was correctly announced; the usual instructions on proximate cause and burden of proof were correctly given. If the appellant desired greater particularity in the instructions, it should have been embodied in a request. This was not done, and the appellant is now in no position to complain.

IX.    Complaint is made of the giving of Instruction 10, as follows:

''The signal of the traffic officer, by reason of which defendant claims to have moved his automobile westwardly across the intersection in question, did not relieve him of the duty of sounding the horn of his machine, or otherwise exercising reasonable care for the safety of persons in the crowd waiting for the street car at the time in question.''

11. NEGLIGENCE: operating vehicle under traffic signal.

This instruction was a correct statement of the law, as we have heretofore pointed out. The giving of the signal on the east side of Pearl Street was not a sufficient compliance with the requirements of the statute that the driver shall slow down and give a timely signal with his bell or horn or other device for signaling, upon approaching a pedestrian who was on a traveled part of the highway, and not upon a sidewalk. In other words, it properly told the jury that the giving of the signal to the traffic officer at that time and place was not sufficient to absolve the appellant from exercising reasonable care thereafter, as he approached the appellee and the crowd of passengers standing on the pavement. Under a similar state of facts, the court of appeals of Kentucky, in *Melville v. Rollwage,* 171 Ky. 607 (188 S. W. 638), referring to the driver of the automobile, said:

''He may have been authorized to move his automobile by a signal from the officer, but such signal did not require or

authorize him to move it over the intervening street and the crossing being used by appellee without giving the necessary warning of its movements, or at such speed as to make its collision with her unavoidable.''

The instruction given was correct.

X.   It is urged that the verdict is excessive, and is the result of passion and prejudice.   The undisputed testimony shows that, before the injury, the appellee was a healthy woman, able to perform her duties as employee in a store in Omaha.   The medical witnesses testified to conditions of pain and suffering, and to a diseased condition of the female organs of the appellee, which might have been caused by such an injury as the one complained of; and, under the evidence, the jury would have been warranted in finding that said condition was, in fact, caused by the injury complained of.   The verdict of $1,000, returned by the jury, under all the circumstances and conditions of the case, does not indicate that the jury was swayed by passion or prejudice, or awarded an excessive or unreasonable amount.

12. NEW TRIAL: verdict: excessiveness: $1,000.

Other matters urged by the appellant have been examined and considered by us, but we find no errors therein.   The judgment of the trial court must be, and the same is,—*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.